UNITED STATES of America, Appellee,

v.

Raymond Glen THURMOND, Appellant.

No. 76–1316.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1976.

Decided Sept. 21, 1976.

Rehearing En Banc Denied
Oct. 21, 1976.

Michael Baker, Springfield, Mo., for appellant.

Bert C. Hurn, U. S. Atty., and David H. Jones, Asst. U. S. Atty., Springfield, Mo., for appellee.

Before GIBSON, Chief Judge, and MARKEY,* and STEPHENSON, Circuit Judge.

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

PER CURIAM.

Defendant, Raymond Thurmond, appeals his conviction for transporting a stolen vehicle in interstate commerce in violation of 18 U.S.C. § 2312 (1970). He received a four-year prison sentence.

On May 13, 1975, a green and white 1974 Oldsmobile Luxury Coupe was stolen from a new car dealership in San Antonio, Texas. Earlier that day Thurmond had test-driven that particular automobile and had remained on the car lot for approximately one hour. Two days later Thurmond checked into the Tara Motel in Joplin, Missouri, and disclosed on the registration card that he was driving an Oldsmobile automobile with license plate number "EGH–514". Galen Bohen of San Antonio testified that he had known Thurmond for some time and that license plates bearing the number "EGH–514" had been stolen from an automobile owned by Bohen. License plates with the number "EGH–514" were later recovered in the Tara Motel room occupied by Thurmond. Bohen also testified that Thurmond called him on May 16, 1975, and asked to send him money in Joplin, Missouri.

In Joplin Thurmond became acquainted with Donal McConnell who was the key Government witness at Thurmond's trial. McConnell testified that he met Thurmond on May 15, 1975, in a Joplin tavern. Thurmond informed McConnell that he was having problems with an automobile; McConnell offered his assistance. Thereafter, McConnell proceeded to the Tara Motel and picked up the 1974 Oldsmobile identified by Thurmond as the one that was creating problems. At trial McConnell identified the Oldsmobile as the one stolen from San Antonio. When McConnell inquired of Thurmond as to whether the Oldsmobile was stolen, Thurmond replied: "I am reasonably sure that it is. I wouldn't lie to you." McConnell and Thurmond discussed disposing of the automobile and splitting the proceeds. For his participation in the attempt to dispose of the stolen Oldsmobile, McConnell was charged with receiving a stolen automobile which had travelled in inter-state commerce. McConnell plead guilty to the charge and was placed on probation for five years.

■ Thurmond's initial contention is that the District Court should have dismissed his case because he was subjected to cruel and unusual punishment during his transfer by the Government from Texas, where he was arrested, to Springfield, Missouri. During that transfer it is alleged by Thurmond that he was incarcerated in a solitary confinement cell in Texarkana and was deprived of his belongings. Thurmond has cited no case law supportive of his position that cruel and unusual punishment at the pre-trial stage automatically entitles the accused to a dismissal of the charges. Generally, such contentions are advanced in a habeas corpus proceeding or a 42 U.S.C. § 1983 action. Thurmond does not contend that his pre-trial detention affected his ability to defend against the charges, nor is there any showing that the Government used the incarceration to extract evidence from Thurmond in violation of his right to counsel or his right to *Miranda* warnings. Under the circumstances of this case, Thurmond's cruel and unusual punishment claim provides no relief from the criminal charges and resultant conviction. *See State v. Williams,* 157 Conn. 114, 121–122, 249 A.2d 245, 248–49 (1968); *State v. Coleman,* 460 S.W.2d 719, 728 (Mo.1970).

■ The second ground set forth for reversal is that the District Court should have granted Thurmond's motion for directed verdict of acquittal at the close of all the evidence on the basis that there was insufficient evidence to support a conviction. In order to establish a violation of § 2312, the Government has the burden of proving that the automobile in question was stolen, that it was transported in interstate commerce by defendant and that defendant was aware that it was stolen. *United States v. King,* 425 F.2d 1163, 1164 (5th Cir. 1970). The Government in this case presented proof that the 1974 Oldsmobile recovered in Joplin was the vehicle stolen in San Anto-

nio. The jury could infer from McConnell's testimony and an abundance of direct and circumstantial evidence that Thurmond knew the Oldsmobile was stolen and that he had transported it from Texas. This case is unlike those cited by Thurmond in which there was an absence of proof connecting defendant to the stolen vehicle. *United States v. Delay,* 440 F.2d 566 (7th Cir. 1971); *Camilla v. United States,* 207 F.2d 339 (6th Cir. 1953). Thurmond's contention that there was insufficient evidence to establish his guilt beyond a reasonable doubt is not only without merit but borders on the frivolous.

■ Finally, Thurmond claims that the District Court should have ordered a mistrial because the prosecutor, in closing argument, commented on Thurmond's failure to testify at trial. The objectionable portion of the argument is as follows:

> Maybe in closing argument, he is going to tell you what the defense is. But how is counsel going to explain away these facts the Government has proved? There has been no evidence presented by the Defense to contradict that Donnie McConnell got that car from Mr. Thurmond. There has been no evidence presented by the Defense to prove why Mr. Thurmond left town so hastily and abandoned all his belongings at the Tara Motel.

The Fifth Amendment proscription against compulsory self-incrimination precludes any comment to the jury on the defendant's failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). To be impermissible, the comment must have been clearly intended or be of such a nature that the jury would naturally and necessarily view the comment as a reference to the defendant's failure to testify. *United States v. Williams,* 503 F.2d 480, 485 (8th Cir. 1974).

In our view, the prosecutor's statements, although not a preferred practice, did not constitute reversible error. The statements, rather than referring to the failure of Thurmond to personally testify, related only to the failure of the defense to refute or contradict the Government's theory of the case. *See United States v. Hawk Wing,* 459 F.2d 428, 430 (8th Cir. 1972). Courts have ruled that in certain situations prosecutors cannot state that the Government's evidence has not been contradicted if the defendant alone possesses the information to contradict the Government's case. *United States v. Handman,* 447 F.2d 853 (7th Cir. 1971); *see United States ex rel. Leak v. Follette,* 418 F.2d 1266, 1269 (2d Cir. 1969). Even in those circumstances, however, the comment can be neutralized and reversal avoided if the trial court gives an immediate corrective instruction to the jury that the defendant is not obligated to testify in his own behalf and that no inferences can be drawn from a failure to testify. *United States v. Dioquardi,* 492 F.2d 70, 81–82 (2d Cir. 1974). Assuming *arguendo* that the prosecutor's comment referred to evidence which could only be contradicted by Thurmond, there is no reversible error under the circumstances of this case. The District Court, upon Thurmond's objection to the statements, tendered a proper corrective instruction. Furthermore, we do not believe the jury would consider the statements to be an oblique reference to Thurmond's failure to testify nor would the jury "naturally and necessarily" consider the statements as such. The evidence was overwhelming and the statement obviously referred to the total failure of the defense to rebut the Government's case and not the failure of defendant to testify.

On the basis of the foregoing, the judgment of conviction is affirmed.