**UNITED STATES of America, Appellee,**

v.

**Walter NELSON, Jr., Appellant.**

**No. 79–1205.**

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1979.

Decided Aug. 2, 1979.

---

H. Allan Dishongh, Little Rock, Ark., on brief, for appellant.

W. H. Dillahunty, U. S. Atty., and Don N. Curdie, Asst. U. S. Atty., Little Rock, Ark., on brief, for appellee.

Before LAY, ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Defendant, Walter Nelson, Jr., was found guilty by a jury of conspiring to possess with the intent to distribute and to distribute heroin, of distributing heroin, and of aiding and abetting another in the distribution of heroin in violation of 21 U.S.C. §§ 841(a) and 846. On appeal defendant makes a general challenge to the sufficiency of the evidence and raises a number of objections to various evidentiary rulings of the district court.[1] We affirm.

Defendant's primary argument is that the district court erred in admitting into evidence the out-of-court declarations of alleged coconspirators Doris Reece, Stuart Dorsey, Michael Webb and Ann Barton.[2] He contends that the declarations were hearsay and hence inadmissible. Under Fed.R.Evid. 801(d)(2)(E) and the applicable decisions of this court, such declarations are not hearsay and are admissible if they are shown by the preponderance of the independent evidence to have been made during the course and in furtherance of a conspiracy to which the defendant and the declarant were parties. *United States v. Bell*, 573 F.2d 1040, 1043 (8th Cir. 1978); *United States v. Lambros*, 564 F.2d 26, 30 (8th Cir.), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); *United States v. Scholle*, 553 F.2d 1109, 1117 (8th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977). Defendant concedes this but contends that the court erred in the order of proof it allowed because it did not require the government to prove by the independent evidence that a conspiracy existed and that the defendant and declarant were participants in it before allowing testimony which contained the out-of-court declarations. Defendant also contends that sufficient independent evidence was not introduced.

The first contention is without merit. The procedure for the admission of a coconspirator's out-of-court declaration, which is set out in *United States v. Bell, supra*, 573 F.2d at 1044, is designed to promote the orderly and efficient presentation of evidence without sacrificing the rights of the defendant. When objection is made by the defendant to the admission of an alleged coconspirator's out-of-court declaration, the court may conditionally admit the declaration without requiring the govern-

---

1. The Honorable Elsijane Trimble Roy, United States District Judge for the Eastern District of Arkansas.

2. Reece was charged as a coconspirator in the indictment. Dorsey, Webb and Barton were un-named, unindicted coconspirators.

ment to first present independent evidence of the conspiracy. But at the same time the court should caution the parties (1) that the statement is being conditionally admitted subject to the defendant's objection; (2) that the government will be required to prove by the preponderance of the independent evidence that the statement was made during the course and in furtherance of a conspiracy to which the declarant and defendant were parties; (3) that the court will make a determination on the record at the close of the evidence on whether the government has met its burden and will at that time rule on the ultimate admissibility of the statement; and (4) that if the court finds that the government has not met its burden, the court will upon appropriate motion declare a mistrial or give a cautionary instruction if it finds that any prejudice caused can be cured by such an instruction. An examination of the transcript shows that the district court carefully followed this procedure in conditionally admitting the out-of-court declarations of the alleged coconspirators.

And we cannot agree that the district court erred in its finding that the government had met its burden and had shown by the preponderance of the independent evidence that the out-of-court statements to which defendant objected were made during the course and in furtherance of a conspiracy to which defendant and declarant were parties.

Dorsey testified that he bought heroin from Reece and that in December, 1977 he met defendant at Reece's apartment in her presence to discuss buying heroin from defendant. Dorsey further testified that he then began buying heroin from defendant for his own use and for resale to others

including Webb and Barton. Webb stated that he bought heroin from Reece and Dorsey for his personal use and for resale to others and that he was contacted by defendant who asked Webb to sell heroin for him.[3] Thereafter, Webb began buying heroin from defendant for his personal use and for resale to others, including Barton whom he had met through Reece. Finally, Barton testified that she met Dorsey and Webb through Reece and that she bought heroin from all three of them for her personal use and for resale to others.

There is even more independent evidence of the heroin sale on May 9, 1978, which formed the basis of the substantive counts of the indictment.[4] As related by Webb, this transaction began when Ann Barton called him seeking to purchase heroin. Webb then contacted defendant to set up the buy. Webb later picked up defendant at the home of defendant's brother and brought him back to Webb's home. There Webb gave the defendant money in return for a package of heroin. Webb immediately drove to a restaurant where he sold the heroin to Barton for $100.00 as arranged. Webb then returned to his home, picked up the defendant and drove him back to defendant's brother's house.[5] All of the essential elements of Webb's testimony were corroborated by other witnesses including Barton, Deloris Hanna, a Little Rock Police Department undercover narcotics agent who had accompanied Barton to the restaurant and participated in the purchase of heroin, and other law enforcement officers who had observed Webb's actions. Indeed, defendant testified that he had accompanied Webb to Webb's home on May 9, 1978 and had remained there while Webb went elsewhere. Defendant denied, however,

**3.** Dorsey also testified that defendant stated that he intended to sell heroin to Webb. We note that the out-of-court statement of a defendant is not included within the definition of hearsay. Fed.R.Evid. 801(d)(2)(A).

**4.** This sale was arranged by Ann Barton at the direction of narcotics agents for whom she was working as a volunteer informant. The entire transaction was observed by undercover agents. The telephone conversation between

Barton and Webb setting up the sale was recorded with Barton's knowledge and permission.

**5.** Webb also testified that he purchased a second package of heroin from defendant that day for sale to someone he met while returning from the restaurant. This sale was not completed, however, because the prospective buyer had left when Webb returned with the heroin.

that he had sold any heroin to Webb and maintained that he had gone there to discuss the sale of a car to Webb. From all the evidence, it is clear that the preponderance of the independent evidence did show that the defendant was involved in a conspiracy with Reece, Dorsey, Webb and Barton from late 1977 until May, 1978, to possess with intent to distribute and to distribute heroin.

We have examined all of the material out-of-court declarations by the coconspirators which were objected to by defendant at trial and find that each was made during the course and in furtherance of the conspiracy.[6] Most of the out-of-court declarations involved identifications by one of the coconspirators of defendant as his or her heroin source. These revelations of defendant's identity were made to other members of the conspiracy and usually preceded an invitation to begin dealing directly with the defendant.

▮ Defendant also argues that even if the out-of-court declarations of coconspirator Reece were admissible under Fed.R. Evid. 801(d)(2)(E), the admission of those statements violated his right under the sixth amendment to the Constitution to confront the witnesses against him.[7] It is true that the confrontation clause and the hearsay rule cannot be regarded as co-extensive in every case. *See Dutton v. Evans,* 400 U.S. 74, 80, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) (opinion of Stewart, J.). Nevertheless, it is the general rule in this circuit that the out-of-court declarations admitted in conformity with the coconspirator rule do not violate a defendant's sixth amendment confrontation right absent some unusual circumstance. *United States v. Martinez,* 573 F.2d 529, 533 (8th Cir. 1978); *United States v. Haynes,* 560 F.2d 913, 916 (8th Cir.), *cert. denied,* 434 U.S. 974, 98 S.Ct. 531, 54 L.Ed.2d 466 (1977); *United States v. Carlson,* 547 F.2d 1346, 1356 (8th Cir. 1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977). If out-of-court declarations were only admissible when the declarant was also available for cross-examination, the value of the rule allowing the admission of coconspirator's statements would be significantly diminished. In many, if not most, cases the coconspirator will himself be subject to criminal charges and will be unwilling to testify. Therefore,

---

**6.** Arguably a few irrelevant out-of-court declarations may not have been in furtherance of the conspiracy and may have been erroneously admitted. Nevertheless, we are convinced that any such error was harmless and defendant was not prejudiced thereby. *E. g.,* Dorsey testified that Reece had told him that defendant was her ex-husband. Defendant himself testified to this relationship. Also, Agent Morris testified that Ann Barton had told him that she wanted to stop using drugs. While such a statement may not have been in furtherance of the conspiracy, it was also clearly not prejudicial to defendant. Finally, we note that defendant objected to the introduction of tapes of the telephone conversation between Webb and Barton in which the two set up the heroin sale of May 9, 1978. Defendant contends that these conversations were hearsay and also that they were irrelevant because defendant was not mentioned on the tapes. Neither contention is correct. Webb's statements were clearly those of a coconspirator made during the course and in furtherance of the conspiracy under Fed.R. Evid. 801(d)(2)(E). Although Barton's statements may not qualify under this rule, a careful analysis of the transcript reveals that her statements were not hearsay. Hearsay includes only those out-of-court statements "offered in evidence *to prove the truth of the matter asserted.*" Fed.R.Evid. 801(c) (emphasis supplied). *See also Anderson v. United States,* 417 U.S. 211, 219, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974). Barton's statements were not offered to prove the truth of any matter asserted by them. Quite the contrary, when Barton states in one conversation that she wants the heroin because she's upset and wants to "get high," it is obvious that this is false since she was buying the heroin under the direction and observation of narcotics agents. The real reason that the conversations were offered in evidence was to demonstrate an act in furtherance of the conspiracy. That this act was accomplished with words does not render it inadmissible hearsay. Nor is there any merit to defendant's relevancy objection. Before the tapes were offered in evidence, Webb testified that the "he" referred to in the tape as the person Webb would contact to obtain heroin was in fact the defendant.

**7.** In this case, although Doris Reece had been charged in the indictment as a coconspirator, she had not yet been apprehended. Thus, unlike the other coconspirators, she did not testify at defendant's trial.

the focus of our concern must be whether indicia of reliability are present and whether the trier of fact was afforded a satisfactory basis for evaluating the truth of the prior statement. *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *United States v. Goins,* 593 F.2d 88, 92 (8th Cir. 1979); *United States v. Scholle, supra,* 553 F.2d at 1119–20. In this case, we are convinced that these criteria have been met and that defendant's sixth amendment rights have not been violated. Reece's statement in which she named defendant as her source of heroin were made to fellow conspirators with whom she shared a common goal, *i. e.,* the distribution of heroin. Therefore, she had an incentive to speak truthfully in matters relating to the common scheme or plan forming the basis of the conspiracy. Moreover, we note that substantial evidence supported the assertions purportedly made by Reece,[8] that the jury was fairly instructed as to credibility, and was told that the testimony of an accomplice is always to be received with caution and weighed with great care.

Defendant also objects to the ruling of the district court which allowed agent Robert Morris of the Federal Drug Enforcement Administration to testify despite the fact that agent Morris had remained in the courtroom after witnesses had been excluded by the court on defendant's motion. We note at the outset that agent Morris could have remained in the courtroom as "an officer or employee of a party which is not a natural person" had he been designated as the government's representative by the attorney for the United States. Fed.R.Evid. 615. Furthermore, a witness who remains in the courtroom after witnesses are excluded is not automatically barred from testifying. Rather this is a matter within the discretion of the district court. *United States v. Oropeza,* 564 F.2d 316, 326 (9th Cir. 1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978); *United States v. Atkins,* 487 F.2d 257, 259 (8th Cir. 1973). We cannot say that the district court abused its discretion in this case and in any event it does not appear that defendant was unfairly prejudiced. Morris' testimony concerned four matters: (1) the taking of photographs of four houses frequented by defendant; (2) Morris' observation from a distance of the heroin sale between Webb, Barton and agent Hanna on May 9, 1978; (3) the procedures employed in taping the telephone conversation between Barton and Webb on May 9, 1978; and (4) the procedures employed in handling the heroin obtained from the May 9, 1978 sale. With the exception of the photographs, which were not critical to the government's case and were not challenged by the defendant, all of these matters were covered by the testimony of other government witnesses.[9]

Defendant's next objection concerns the admission into evidence of the package transferred from Webb to Barton and the testimony of a Federal Drug Enforcement Administration chemist that the powder inside the package contained heroin. This objection is based on the fact that no testimony was offered to show that the package and its contents remained unchanged from the time it arrived at the DEA laboratory on May 15, 1978 until the chemist performed his analysis on June 21, 1978. Thus, defendant argues, the chain of custody was broken so that the package and the chemist's analysis of its contents were inadmissible. The short answer to this con-

---

8. There seems to be no reason to question Reece's knowledge of the matter contained in her purported declarations or her ability to accurately and effectively communicate this knowledge. As to the accuracy of the reports of Reece's statements made by Dorsey, Webb and Barton, these witnesses were subjected to vigorous cross-examination at trial.

9. At trial defendant also objected to Morris' testimony because he claimed that the govern-

ment's attorney had omitted Morris' name from a list of witnesses supplied orally to defendant's counsel in a telephone conversation. The government's attorney could not remember whether he had mentioned Morris or not. To dispel any prejudice which might have arisen, the district court recessed the trial to allow defendant's counsel to interview Morris or take any action he deemed necessary to be able to effectively cross-examine Morris.

tention is that agents Hanna and Morris testified that they placed the package containing the substance obtained from Webb into a plastic evidence envelope and then heat-sealed the top of that envelope. Agent Hanna then marked the seal with her initials. The chemist testified that this seal was intact when he cut open the bottom of the envelope to remove the package for analysis of its contents. This evidence, combined with the presumption that in the absence of any evidence to the contrary an official would not tamper with exhibits or their contents, is sufficient to support the ruling of the district court. *United States v. Brown,* 482 F.2d 1226, 1228 (8th Cir. 1973).

Finally, we reject defendant's contention that the evidence was insufficient to sustain the conviction. The government is not required to produce evidence which excludes every reasonable hypothesis except that of guilt. It is enough to introduce evidence sufficient to convince the jury beyond reasonable doubt that the defendant is guilty. *United States v. Shahane,* 517 F.2d 1173, 1177 (8th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975). In reviewing a jury verdict on appeal, we are required to view the evidence in the light most favorable to the government, *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and we accept as established all reasonable inferences to support the conviction. *United States v. Scholle, supra,* 553 F.2d at 1118; *United States v. Overshon,* 494 F.2d 894, 896 (8th Cir.), *cert. denied,* 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974). We are satisfied that the evidence was sufficient to convict. Defendant's argument on sufficiency essentially amounts to an attack on the credibility of government witnesses. Credibility of witnesses is a matter for the jury to determine and in view of the corroborating circumstantial evidence hereinabove discussed it is not surprising that the jury chose to credit the testimony of the government witnesses over that of defendant.

Affirmed.