**UNITED STATES of America, Appellee,**

v.

**Bruce BELL, Appellant.**

**No. 80–2160.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 18, 1981.

Decided June 30, 1981.

Q. Byrum Hurst, Jr. (argued), Hot Springs, Ark., for appellant.

George W. Proctor, U. S. Atty., Diane Mackey, Don N. Curdie, Asst. U. S. Attys., Little Rock, Ark., for appellee.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

ROSS, Circuit Judge.

The appellant, Bruce Bell, was indicted on September 11, 1979, along with Jeffrey Joseph Benson. Count I of the indictment alleged that Bell, Benson and "diverse other persons known and unknown" conspired to possess and distribute cocaine in violation of 21 U.S.C. §§ 841(a) and 846. Count II charged Bell with the use of a communication facility in furtherance of the conspiracy, in violation of 21 U.S.C. § 843(b). A third count, which is not at issue in this appeal, charged Benson with possession of cocaine. Bell was tried individually in the Eastern District of Arkansas[1] and was convicted on Counts I and II. We affirm.

The facts of this case are as follows: In August of 1979, Bruce Bell was contacted by a police informant who, on previous occasions, had obtained cocaine through Bell from Jeffrey Benson. The necessary arrangements were made, and on August 27, 1979, Jeffrey Benson was arrested outside of the Little Rock Airport after placing a brown bag containing cocaine on the back seat of the informant's car. Subsequent to the arrest, Benson was removed from the car and his bag was seized and searched by the arresting officers. Although Bell arrived at the Little Rock Airport to meet Benson and the informant later that day, he was not immediately arrested.

Benson was tried and convicted on Counts I and III of the indictment on November 22, 1979, and his appeal was pending on August 25, 1980, when Bell was finally apprehended. On September 18, 1980, Benson's conviction was reversed by this court because the warrantless search of his bag was found to be unreasonable under the circumstances surrounding his arrest. *United States v. Benson*, 631 F.2d 1336 (8th Cir. 1980).

Bell was brought to trial on October 20, 1980. His motions to suppress certain evidence were denied by the district court and as a result of those denials the cocaine seized from Benson and several tape recordings of telephone conversations between the informant and Bell were introduced into evidence. Bell was convicted and subsequently was sentenced to a prison term of three years on Count I and to a two year probationary term on Count II.

On appeal, Bell raises several arguments: (1) that this court's reversal of Benson's conviction on fourth amendment grounds requires a reversal of Bell's conviction on both counts; (2) that the trial court erred in denying his motion to suppress the cocaine seized from Benson; (3) that the trial court erred in denying his motion to suppress the tape recordings; (4) that certain hearsay statements of coconspirators were improperly admitted into evidence; and (5) that the prosecutor improperly commented on Bell's failure to testify at trial.

---

1. The Honorable Henry Woods, United States District Judge, presiding.

We find no merit in Bell's first argument. The reversal of Benson's conviction on the conspiracy count does not require this court to reverse Bell's conviction for his involvement in that conspiracy or for his use of a communications facility in furtherance of the conspiracy. It is true, as Bell argues, that an individual cannot be convicted for conspiring with himself, *United States v. Moss*, 591 F.2d 428, 434 (8th Cir. 1979), and that where all other alleged coconspirators are acquitted, the conviction of one person for conspiracy will not be upheld. *United States v. Phillips*, 630 F.2d 1138, 1146 (6th Cir. 1980). In the present case, however, the evidence clearly demonstrates that other unindicted individuals "known and unknown to the grand jury" were involved in the conspiracy. Under these circumstances, this court has held that a reversal is not warranted:

> If the indictment names persons unknown as coconspirators, and there is evidence to support the charge that one of the two defendants conspired with the unknown persons, his conviction can stand, even though the other defendant was acquitted.

*Cross v. United States*, 392 F.2d 360, 362 (8th Cir. 1968). *Accord, United States v. Artuso*, 618 F.2d 192, 197 (2d Cir.), *cert. denied*, 449 U.S. 861, 101 S.Ct. 164, 66 L.Ed.2d 77 (1980); *United States v. Shuford*, 454 F.2d 772, 779–80 (4th Cir. 1971).

The indictment alleges that Bell, Benson and other persons known and unknown were involved in the conspiracy to possess and distribute cocaine from on or about April 1, 1979, to August 27, 1979, when Benson was arrested. The scope of the conspiracy thus covers a period of several months prior to the events which culminated in Benson's arrest, and the proof at trial indicated that several other persons were involved in drug transactions with Bell and Benson during that period who were, in fact, known and unknown to the grand jury. We therefore reject Bell's first argument.[2]

Turning to Bell's second argument, we find no error in the trial court's denial of Bell's motion to suppress the cocaine seized from Benson. The trial court properly ruled that Bell's fourth amendment rights were not infringed by the seizure of the cocaine and that Bell thus had no "standing" to object to the introduction of the evidence which was illegally obtained from Benson. The Supreme Court has firmly established that:

> A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Alderman, supra*, [394 U.S. 165] at 174 [89 S.Ct. 961 at 966, 22 L.Ed.2d 176]. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, *United States v. Calandra*, 414 U.S. 338, 347, [94 S.Ct. 613, 619, 38 L.Ed.2d 561] (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.

*Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1979). *See United States v. Baucom*, 611 F.2d 253 (8th Cir. 1979).

Similarly, we find no reversible error in the trial court's denial of Bell's motion to suppress the tape recordings of telephone conversations in which arrangements for the August 27, 1979 drug transaction were made. The quality of the recordings was admitted by the government to be very poor, and several portions of the tapes were inaudible. Nevertheless, Judge Woods admitted the tapes into evidence over the defendant's objection that the discernable portions were misleading and that the inaudible portions would lead to improper speculation on the part of the jury.

Prior to the trial, Judge Woods listened to the tapes and determined that "enough of

---

2. Even if Benson were the only other conspirator we still would be reluctant to reverse Bell's conviction in this case. The reversal of Benson's conviction on fourth amendment grounds does not exonerate him from the charges in the indictment and it is entirely possible that Benson ultimately might be convicted on the conspiracy and possession charges in a new trial.

the tapes are audible to get the gist of them," and that the probative value of the tapes outweighed their prejudicial effect. Moreover, both parties were given the opportunity to submit transcripts of their respective versions of the tapes to the jury to read while the tapes were being played, and the court ruled that the defendant would be allowed to argue "any version in the event the wording might be ambiguous from the hearing of the tapes." The government's transcript was given to the jury over the objection of the defendant. The defendant chose not to submit a transcript.

■ At the outset, we note that the admission into evidence of tape recordings containing inaudible portions is a matter within the sound discretion of the trial court, and will not be reversed unless there has been an abuse of that discretion. *United States v. Williams*, 548 F.2d 228, 232 n.13 (8th Cir. 1977); *United States v. Howard*, 504 F.2d 1281, 1287 (8th Cir. 1974); *United States v. Skillman*, 442 F.2d 542, 552 n.8 (8th Cir.), *cert. denied*, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). And in our view, in spite of the admittedly poor quality of the tape recordings, there was no abuse of the trial court's discretion in admitting them into evidence.

The task of the trial court, in determining whether to admit tape recordings into evidence which contain inaudible portions, is to assess whether the unintelligible portions are "so substantial, in view of the purpose for which the tapes are offered, as to render the recording as a whole untrustworthy * * *." *United States v. Young*, 488 F.2d 1211, 1214 (8th Cir. 1973). Viewed in this light, we are satisfied from our review of the record that the grounds cited by the district court for denying Bell's motion to suppress the tapes were valid: the conversations were probative of material issues raised in the indictment, the tapes were audible enough to provide the jury with the "gist" of the conversations, and the defendant was given every opportunity to offer his version of the inaudible portions so as to clear up whatever ambiguities the tapes might have raised.[3] We thus conclude that the trial court did not abuse its discretion in admitting the tapes into evidence.

■ Bell next challenges the trial court's ruling on the admissibility of several hearsay statements made by coconspirators under Rule 801(d)(2)(E) of the Federal Rules of Evidence. It is clear that such statements are admissible against a defendant "if the government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *United States v. Bell*, 573 F.2d 1040, 1043 (8th Cir. 1978). Bell contends, however, that the statements were inadmissible because the government failed to prove by a preponderance of independent evidence that the statements were made in furtherance of and during the course of the conspiracy. *Id.* at 1044.

Bell does not challenge the procedure followed by the district court in admitting the statements. Prior to the trial, counsel for Bell suggested that the proper procedure to follow in determining the admissibility of the hearsay statements would be that set forth in *United States v. Bell, supra*, as reiterated in *United States v. Nelson*, 603 F.2d 42, 44–45 (8th Cir. 1979):

> When objection is made by the defendant to the admission of an alleged coconspirator's out-of-court declaration, the court may conditionally admit the declaration without requiring the government to first present independent evidence of the conspiracy. But at the same time the court should caution the parties (1) that the statement is being conditionally admitted subject to the defendant's objection; (2)

---

**3.** We point out that the trial court did not admit the government's transcript of the conversations into evidence. The transcript was given to the jury, over the defendant's objection, to be read while the tapes were played. After the tapes were played the transcripts were collected from the jury. The trial court instructed the jury twice before the tapes were played that the transcripts were not evidence, and that the jury should be guided solely by the tapes in the case of any ambiguity.

that the government will be required to prove by the preponderance of the independent evidence that the statement was made during the course and in furtherance of a conspiracy to which the declarant and defendant were parties; (3) that the court will make a determination on the record at the close of the evidence on whether the government has met its burden and will at that time rule on the ultimate admissibility of the statement; and (4) that if the court finds that the government has not met its burden, the court will upon appropriate motion declare mistrial or give a cautionary instruction if it finds that any prejudice caused can be cured by such an instruction.

This procedure was followed in the instant case; the statements were conditionally admitted by Judge Woods over the objection of the defendant and at the close of the government's evidence the court ruled that "sufficient proof of a conspiracy has been introduced by the Government to justify the admission of the extrajudicial statements of the members of the conspiracy * * *".

We find no error in the district court's conclusion that the government met its burden in establishing by a preponderance of the independent evidence that the conspiracy existed and that the statements were made in furtherance of it. The telephone records, the tape recordings of the conversations between the informant and Bell, the cocaine, the evidence of travel by Bell and Benson and the testimony concerning previous drug transactions all provided independent evidence of the conspiracy. Accordingly, there is no merit to this claim.

Finally, we reach Bell's argument concerning the prosecutor's closing remarks. Bell complains that the prosecutor improperly commented on his failure to take the witness stand in the following manner:

> Ladies and gentlemen of the jury, the testimony was that, and let's go over it: Sandefer testified that he and David Smith were dope dealers. I wanted them to say that because they were dope deal-

ers. But how do you think they know Mr. Bell and Mr. Benson if they weren't dope dealers? You have not heard the reason for them being here other than the fact that they were dealing in dope in Arkansas.

> MR. CLAY: Your Honor, I am going to object to that vigorously, that last statement, and also ask the Court, move the Court for a mistrial in this matter.

> THE COURT: Well, that will be overruled. This is closing argument and you've got pretty wide latitude.

 The trial court has broad discretion in ruling upon the scope of closing arguments, and this court will reverse such a ruling of the trial court only upon a showing of an abuse of that discretion. *United States v. Lewis,* 547 F.2d 1030, 1036–37 (8th Cir. 1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977). And for a prosecutor's comment to infringe on the fifth amendment right against self-incrimination, the statement "must have been clearly intended or be of such a nature that the jury would naturally and necessarily view the comment as a reference to the defendant's failure to testify." *United States v. Thurmond,* 541 F.2d 774, 776 (8th Cir. 1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977).

 Although we do not approve of the exact language used by the prosecutor in his closing argument, we hold that the trial court did not abuse its discretion in overruling Bell's motion for a mistrial. In our view, the "statements, rather than referring to the failure of [the defendant] to personally testify, related only to the failure of the defense to refute or contradict the Government's theory of the case." *United States v. Thurmond, supra,* 541 F.2d at 776. *See also Weddell v. Meierhenry,* 636 F.2d 211, 214 (8th Cir. 1980), *cert. denied,* —— U.S. ——, 101 S.Ct. 2024, 68 L.Ed.2d 329 (1981). Accordingly, we do not believe that the statement would lead the jury "naturally and necessarily" to view the statement as a comment on Bell's failure to take the witness stand. *United States v. Thurmond, supra,* 541 F.2d at 776.

In light of the foregoing, we hold that Bell's conviction on both counts must·be affirmed.