Larry V. WILLIAMS, Petitioner,

v.

Jack R. DUCKWORTH, Warden, and Linley E. Pearson, Attorney General of the State of Indiana, Respondents.

No. S 82–58.

United States District Court,
N.D. Indiana,
South Bend Division.

May 10, 1983.

MEMORANDUM AND ORDER

SHARP, Chief Judge.

Petitioner, Larry Williams, is a state prisoner confined at the Indiana State Prison, Michigan City, Indiana. Respondent, Jack R. Duckworth, is the warden of the prison, and has custody of Williams pursuant to judgment of conviction by the Fulton Circuit Court, Fulton County, Indiana. Respondent, Linley E. Pearson, is the Attorney General of the State of Indiana, who is not alleged to have custody of petitioner. Relief is sought under 28 U.S.C. § 2254.

Williams was convicted by jury of murder, conspiracy, and armed robbery and was determined to be a habitual offender. He was sentenced to combined sentences of 130 years. A direct appeal was taken to the Supreme Court of Indiana from this conviction. Both issues alleged herein were included in and ruled on in said direct appeal. The Supreme Court of Indiana affirmed the convictions in a published opinion. *Williams v. State,* Ind., 426 N.E.2d 662 (1981), and vacated the sentence for armed robbery for reasons unrelated to issues raised herein.

Pursuant to 28 U.S.C. § 2254, petitioner has filed a petition for a writ of habeas corpus, raising the following issues: whether the conviction violates his rights guaranteed by the Fifth and Fourteenth Amendments because of a prosecutorial reference to his failure to testify at trial, and whether his Fourteenth Amendment due process rights were violated due to introduction of certain "extraneous and prejudicial" testimony which, when added to the other alleged impropriety had a cumulative effect such as to deny him a fair trial.

The state court record has been filed in accordance with 28 U.S.C. § 2254(d), and *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and has been carefully reviewed.

Jere L. Humphrey, Plymouth, Ind., for petitioner.

Linley E. Pearson, Atty. Gen. of Ind., Indianapolis, Ind., for respondents.

A.

In final summation, the prosecutor stated as follows:

It's true, DeWayne Schuh, Larry Perkins and George Redmon testified, agreed to testify pursuant to plea agreements. They all said they'd agree to testify, and to testify means to sit on the stand under oath. Nobody agreed to make up a story. There's no evidence of that. There's really nothing—their stories are the only stories you have in basis. They became our witnesses by their own doing and by the doing of Larry Williams, when they agreed to commit the crime. They were the people at the scene and they're the ones best to know what happened. They were there. They are his friends and their story is basically the only story.

MR. HUMPHREY: May we approach the bench, Your Honor.

At this point, the defense objected to the comment about this being "basically the only story", and moved for a mistrial, but did not ask that the court admonish the jury as to the said remarks.

In its written opinion, the Supreme Court of Indiana found from the record that Williams was the only other person placed at the scene who did not testify; the only one who could have a contradictory "story" was appellant. The court concluded that in this framework the comment was "subject to interpretation" by the jury as a comment on the failure of Williams to take the stand. *Id.*, at 666. It was clear to the Indiana court that the prosecutorial remark was not so harmful that an admonition wouldn't have cured it. Under Indiana law, an admonition would have been improper absent a specific request for one from the aggrieved party, as the Supreme Court of Indiana explained in the *Williams'* decision:

> In Indiana pursuant to our holding in *Rowley v. State, supra*, (1972) 259 Ind. 209, 285 N.E.2d 646, the invasion of right from this improper comment could have been remedied by an immediate and effective admonition by the court to the jury to disregard it. Pursuant to *Gross v. State*, (1974) 261 Ind. 489, 306 N.E.2d 371 and *Lee v. State*, 424 N.E.2d 1011 (Ind. 1981), however, it is reversible error for the trial court to give a preliminary or

final instruction to the jury regarding the refusal of the defendant to testify, in the absence of a request by the defendant for it. An admonition to the jury to disregard a prosecutorial statement which is subject to interpretation by the jury as a comment on the refusal to testify can, like the instruction not to consider the refusal to testify at trial, invite jury consideration of that fact, and therefore should be treated similarly. We therefore hold that the jury should be given an admonition when the defendant requests one, and not otherwise, and that the test to be applied in determining whether or not to grant a mistrial is whether or not such an admonition would be fully effective if given. Here we believe it would have been, and it was therefore not error to refuse to declare a mistrial. (426 N.E.2d at 666–667).

■ In failing to request an admonition, Petitioner bypassed a remedy, which was available at the trial court level. Failure to preserve an issue by making a requisite objection or other motion requires not only a showing of a cause for the "bypass", but also a showing of actual prejudice before a collateral attack may be made on the conviction. *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1977), and *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), make it clear that a state rule requiring a challenge to be made at trial or not at all was consistent with the Constitution, and amounted to an independent and adequate state procedural ground which would have prevented direct review by federal habeas. 433 U.S. at 85, 97 S.Ct. at 2506. Therefore, the Supreme Court of Indiana explicitly held that the *Francis* rule applied as well to failure to object to admission of evidence at trial. *Id.*

In *Cole v. Stevenson*, 620 F.2d 1055 (4th Cir.1980), it was held that although North Carolina's rule did not require "contemporaneous objection" of a jury instruction that may have improperly shifted the burden of proof to a defendant, failure to make exception amounted to such a bypass and hence the *Francis* rule was applied.

Our own Court of Appeals recognized that this line of cases established the need to raise contemporaneous objections in order to preserve issues arising at trial. *Guzzardo v. Bengston,* 643 F.2d 1300 (7th Cir. 1981). (However, in that case a post-trial assertion was available and was permitted to be pursued).

And square on point with the present issue this rule applied to failure to afford the trial court an opportunity to remedy a prosecutor's allegedly improper comments in summation on a defendant's failure to advance exculpatory evidence. *Broadwater v. Dunham,* 479 F.Supp. 1097 (E.D.N.Y. 1979).

■ Petitioner must show a cause for his failure to request an admonition, and actual prejudice resulting from that failure. He has not done so.

Petitioner has advanced no cause for his failure to request an admonition. Therefore, he must demonstrate that actual prejudice resulted.

This is the type of issue which tends to rest on its individual facts. It is instructive to turn to federal court of appeals decisions on direct appeal to determine what sort of prejudice is necessary before they will invoke their supervisory powers of the federal district courts. If it can be demonstrated that a given allegation of prejudice does not raise to the level which will prompt a federal appellate court to reverse pursuant to its direct supervisory powers, then it may be concluded with assurance that such an allegation does not rise to a violation of constitutional rights that could be remedied in a collateral attack.

Our own Circuit has found an abrogation of a defendant's Fifth Amendment rights to remain silent by a prosecutor's referring to evidence as "uncontradicted" when only the defendant could have been called on to contradict the evidence. *United States v. Handman,* 447 F.2d 853 (7th Cir.1971); *United States v. Lyon,* 397 F.2d 505 (7th Cir.1968), *cert. den.,* 393 U.S. 846, 89 S.Ct. 131, 21 L.Ed.2d 117 (1968).

Applying this principal, the courts have consistently held that to reverse on direct appeal, a conviction on grounds of improper comment on a criminal defendant's silence requires a showing of an abuse of the trial court's broad discretion in ruling upon the scope of closing arguments. *United States v. Lewis,* 547 F.2d 1030, 1036–37 (8th Cir. 1976), *cert. den.,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977); *United States v. Bell,* 651 F.2d 1255 (8th Cir.1981):

> [F]or a prosecutor's comment to infringe on the fifth amendment right against self-incrimination, the statement must have been clearly intended or be of such a nature that the jury would naturally and necessarily view the comment as a reference to the defendant's failure to testify. *United States v. Thurmond,* 541 F.2d 774 (8th Cir.1976), *cert. den.,* 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977).

(*Bell, supra,* at 1260).

In this case, the Supreme Court of Indiana did not find that the jury would "naturally and necessarily view the comment to testify"; it was merely "subject to interpretation by the jury" as such a comment. 426 N.E.2d at 666. Thus, the remark complained of does not rise to the level of a prejudicial comment which would justify reversal on direct appeal in the Federal judiciary. In *Bell,* the court found the following comment did not lead the jury to "naturally and necessarily" view it as comment on Bell's failure to take the stand:

> Ladies and gentlemen of the jury, the testimony was that, and let's go over it: Sandefer testified that he and David Smith were dope dealers. I wanted them to say that because they were dope dealers. But how do you think they know Mr. Bell and Mr. Benson if they weren't dope dealers? You have not heard the reason for them being here other than the fact that they were dealing in dope in Arkansas.
>
> MR. CLAY: Your Honor, I am going to object to that vigorously, that last statement, and also ask the Court, move the Court for a mistrial in this matter.

THE COURT: Well, that will be overruled. This is closing argument and you've got pretty wide latitude. (651 F.2d at 1260).

In *United States v. Sigal,* 572 F.2d 1320 (9th Cir.1978), an appellant complained of two allegedly improper remarks:

(1) "But the point is, ladies and gentlemen, that he (a codefendant who pled and testified for the prosecution), unlike the defendants Baker and Sigal, came forward before the trial and admitted his guilt. He came forward and he told us what he did."

(2) "At the same time the defendants did not deny that Mr. Baker and Mr. Sigal were in charge of the ground portion of the conspiracy if there was such a portion."

572 F.2d 1322.

The Ninth Circuit found that, in context, the first comment was "not of such character that the jury would naturally and necessarily take them to be comments on the failure of the accused to testify." *Id.* However, the second comment, while appearing to be "both logical and consistent when viewed in hindsight," when "taken at its objective face value, as we must assume the jury took it, constituted a comment on the failure of the defendants to testify, and thus was error of constitutional dimension." 572 F.2d at 1323.

Nevertheless, the *Sigal* court did not reverse the conviction:

Automatic reversal of the conviction does not result, however, if the error can be said to have been harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824 [828], 17 L.Ed.2d 705 (1967). The appropriate test was outlined in *Anderson v. Nelson,* 390 U.S. 523, 524, 88 S.Ct. 1133, 1134, 20 L.Ed.2d 81 (1968), wherein the Court stated that such a comment was reversible error when "such comment is extensive, where an inference of guilt from silence is stressed to the jury as a basis of conviction, and where there is evidence that could have supported acquittal." Here, the comment was not extensive, there

was minimal stress on any inference of guilt to be drawn by the jury from the silence, and there was no acquittal. *United States v. Parker,* 549 F.2d 1217, 1221 (9th Cir.), *cert. denied,* 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977). The error was harmless. *Id.*

Applying this test to this case, it is readily observed that there was no inference of guilt stressed from the silence, the remark was not extensive, and there was no substantial evidence which supported an acquittal.

In *United States v. Robinson,* 651 F.2d 1188 (6th Cir.1981), the prosecutor made the following statements:

You should think to yourself what is Mr. Robinson's defense to this whole thing? What does he claim really happened? Now right to this moment, despite the lengthy cross-examination... I suspect I will suggest to you do't even know what the claim of innocence is because there has never been any evidence, any real concrete suggestion even as to the innocent explanation as to what happened with respect to that bill.

(Defense counsel's) opening, he talked for an hour, he didn't mention Stephen Miller's name. He didn't refer to that...

\* \* \* \* \* \*

... most of all, listen to what (defense counsel) says to you about Mr. Miller's testimony and all of the documents I have gone through with you, because I would suggest to you as of now, there has been no argument even as to how in any way that could be legitimate, and I would also suggest to you that *there has been no evidence,* not even that much, as to how that could have been legitimate. 651 F.2d at 1197–1198. Emphasis in original. In *Robinson,* the opinion of the Court provides a more detailed discussion of the nature of the appellate determination of the effect of such remarks:

To reverse a conviction for improper comment on the criminal defendant's Fifth Amendment right to remain silent,

we must find one of two things: that "the prosecutor's" manifest intention was to comment upon the accuded's failure to testify, or that the remark was "of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Rochan,* 563 F.2d 1246, 1249 (5th Cir.1977); *United States v. Wells,* 431 F.2d 434, 435 (6th Cir.1970), *cert. denied,* 400 U.S. 997, 91 S.Ct. 475, 27 L.Ed.2d 448 (1871). "We cannot find that the prosecutor manifestly intended to comment on the defendant's failure to testify if some other explanation for his remark is equally plausible." *Rochan, supra,* at 1249. Whether the jury "necessarily construes" a defendant's failure to testify requires a probing analysis of the context of the comment, and the likely effect of the district court's curative instruction, if any. 651 F.2d at 1197.

In *Robinson,* the Court found neither a manifest intention nor a jury's necessarily construing these remarks as a comment on the defendant's failure to testify. (There was another element of this decision, as well, and that was that the defense counsel drew attention of the jury to Robinson's silence.)

■ In an appeal from a federal criminal conviction dealing with prosecutorial impropriety, the Seventh Circuit Court of Appeals stated that such a remark requires determination of its probable effect on the jury in combination with all the evidence presented. *United States v. Rodriguez,* 627 F.2d 110 (7th Cir.1980). If the evidence of guilt is sufficient to find beyond a reasonable doubt that the error was harmless, reversal may not be required. *Id.*

■ In this case, no harmful error or prejudice (of constitutional dimensions, at least) occurred. There is only one objectional remark, and the impropriety in it seems most plausibly explained as no more than a somewhat overzealously pursued argument intended to bolster the credibility of the inculpatory testimony of petitioner's alleged confederates. Thus, it cannot be said that there was a manifest intention on the part of the prosecutory to comment on defendant's failure to testify. The Supreme Court of Indiana also characterized the remark as only "subject to interpretation" as an improper comment, not "necessarily construed" as such.

### B.

■ The second issue involves testimony by an Officer Woodward concerning an altercation at the Marshall County jail. This testimony, and its effect on the trial, were discussed by the Supreme Court of Indiana as follows:

Appellant next contends that the trial court erred in permitting Officer Woodward to testify concerning an altercation that took place at the Marshall County Jail while appellant was awaiting trial. The substance of the conversation was that appellant accused Woodward of being incompetent and Woodward replied that he did not go around killing old men. Appellant replied, that was Woodward's problem as he would not have the guts to do it. This testimony was irrelevant and inadmissible, and it was error for the trial court to permit its use. The State in its brief is totally unable to suggest any legitimate purpose to the injection of this testimony. In determining whether an error in the introduction of evidence warrants a new trial, the appellate tribunal must assess the probable impact of it upon the jury. *Jackson v. State,* (1971) 257 Ind. 477, 275 N.E.2d 538.

Justice DeBruler speaking for a unanimous Supreme Court concluded:

The case for the prosecution was strong. It consisted of the statements of codefendants, corroborated by physical facts. The statement attributed to appellant was one made by a young male during his incarceration, under pressure of pending charges, at a time when tempers flared. It was an outburst between captive and captor. The meaning of the statement itself is doubtful. It can, however, be interpreted as incongruous with words one might reasonably expect to hear from

**512**

one wrongfully charged. There is a prejudice flowing from this trial court error; however, it is so slight that we can justly say that it did not affect the jury verdict. On the entire record the highest court of Indiana unanimously concluded that any error was harmless. This Court concurs in and adopts that conclusion.

 Traditionally, state evidentiary rulings are not cognizable under federal habeas corpus actions. The admissibility of evidence is a matter of state law and unless there is a resultant denial of fundamental fairness or the derogation of a specific constitutional right, no constitutional issue is involved. *United States ex rel. Harris v. Illinois,* 457 F.2d 191, 198 (7th Cir.1972). Evidentiary questions are not subject to review by a Federal court in a habeas corpus proceeding by a state prisoner unless there is an error of such magnitude as to deny fundamental fairness. *United States ex rel. Bibbs v. Twomey,* 506 F.2d 1220 (7th Cir.1976). An alleged error arising from admission of disputed evidence is not grounds for Federal habeas relief absent a showing of deprivation of a specific due process right. *Guzzardo v. Bengston,* 643 F.2d 1300 (7th Cir.1981).

The Fifth Circuit's standard for determining whether fundamental error resulted from erroneous admission of prejudicial evidence (and hence whether habeas relief may be justified) is whether the error was "material in the sense of a crucial, critical, highly significant factor." *Bryson v. Alabama,* 634 F.2d 862 (5th Cir.1981).

As the Supreme Court of Indiana found in this case, the meaning of the statement was doubtful, although one interpretation of it might be somewhat prejudicial. 426 N.E.2d at 670. It did not rise to the level of a constitutional violation.

No basis for relief is found under 28 U.S.C. § 2254. Writ DENIED.