**UNITED STATES of America, Appellee,**

v.

**KING'S TRADING, INC., a corporation, and Jar-Yu King, an individual, Appellants.**

**No. 83–1021.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1983.

Decided Dec. 7, 1983.

Thomas Scarlett, Chief Counsel, Washington, D.C., Jacqueline H. Eagle, Associate Chief Counsel, Food and Drug Admin., Rockville, Md., William F. Baxter, Asst. Atty. Gen., Barry Grossman, Frederic Freilicher, Attys., Dept. of Justice, Washington, D.C., for appellee.

Willard B. Bunch, Campbell, Erickson, Cottingham, Morgan & Gibson, John Edward Cash, Kansas City, Mo., for appellants.

Before HEANEY and McMILLIAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

HEANEY, Circuit Judge.

Appellants King's Trading, Inc., and Jar-Yu King were convicted of two counts of violating the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* The appellants contend on appeal that the trial

court erred in refusing to grant a mistrial when the prosecuting attorney referred to King's prior conviction for a similar offense during final argument, and admitting irrelevant and prejudicial expert testimony. We affirm.

In January, 1981, the appellants stored a shipment of sweet and sour sauce in a warehouse on Wyandotte Street in Kansas City, Missouri. They also stored the overflow of a large shipment of rice in that warehouse in August, 1981. In mid-October, 1981, Food and Drug Administration (FDA) investigator Jan Longenecker conducted a three-day inspection of the Wyandotte warehouse. He found extensive evidence of rodent infestation and actual contamination of some of the bags of rice. On the last day of his inspection, Longenecker observed some of the intact rice bags being moved to an adjacent building. The Missouri Department of Health thereafter embargoed the rice and sweet and sour sauce.

■ The Federal Food, Drug and Cosmetic Act prohibits any act which results in food being adulterated while it is held for sale after shipment in interstate commerce. 21 U.S.C. § 331(k). Food is adulterated "if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food," 21 U.S.C. § 342(a)(3), or "if it has been * * * held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." 21 U.S.C. § 342(a)(4). This latter section does not require actual contamination of food, only conditions that may result in contamination. *Berger v. United States,* 200 F.2d 818, 821 (8th Cir. 1952).

The primary issue at trial was whether the rice and sweet and sour sauce were "held for sale" within the meaning of 21 U.S.C. § 331(k). King testified he had intended to destroy the food when he discovered it had been exposed to rodents. To buttress this assertion, King testified on direct examination that he had been convicted of a similar misdemeanor in 1978. King apparently hoped the jury would surmise that he had learned his lesson and he would not have again attempted to sell food he knew was adulterated. On cross-examination, the government attorney asked King if, in view of his prior conviction, he had ever stated to the FDA investigators that he intended to dump the food. To further undermine King's position, the government also brought out that he had not dumped the rice immediately. Defense counsel made no objection to this line of questioning.

In his closing argument, defense counsel argued that King did not intend to sell any of the contaminated rice and sauce stored at the Wyandotte warehouse. In rebuttal, government counsel argued, in part, as follows:

When you boil it all down, was he going to dump that rice? It was there 30 days. They moved it over into the next building. They segregated out those bags that weren't gnawed on. At no time during the government inspection did he ever indicate to any of the government people that he was going to dump it. The first time we've heard anything about dumping, I submit to you, is in this trial today. And this is a man who had a prior conviction for a similar act.

At this point, defense counsel moved for a mistrial on the ground that government counsel was arguing King should be found guilty "because he was previously convicted of the same offense." The court denied the mistrial motion, but immediately instructed the jury to entirely disregard King's prior conviction in considering the guilt or innocence of either defendant. The court also admonished the government attorney to avoid any further mention of the prior conviction for any purpose.

■ King contends the court's failure to grant a mistrial at this juncture was reversible error. We disagree. "The trial court has broad discretion in controlling closing arguments. Absent a showing of abuse of discretion this court will not reverse." *United States v. McCaghren,* 666 F.2d 1227, 1230 (8th Cir.1981); *United States v. Bell,* 651 F.2d 1255, 1260 (8th Cir.1981). The

record supports the government's contention that it was using King's prior conviction, as the defense had done, to raise inferences about King's intent. Moreover, since the prior conviction was already in evidence and defense counsel had ample opportunity to rehabilitate the defendant in his own closing remarks, the possibility of prejudice was reduced. *United States v. Taglione,* 546 F.2d 194, 197 (5th Cir.1977). The judge did everything in his power to eliminate any possible prejudice by not only sustaining defense counsel's objection, but also instructing the jury to disregard the remark. In these circumstances, we find no abuse of discretion in the district court's denial of the mistrial motion.

King further contends the district court abused its discretion in admitting the testimony of Paris Brickley, an expert in entomology and pest control, and Dr. Dario Capucci, Jr., who testified about the threat to human health posed by pathogenic bacteria on food packaging exposed to rodents. King maintains that the testimony of these two experts was unnecessary to prove a violation of the Federal Food, Drug and Cosmetic Act and was inflammatory and prejudicial.

■ The testimony of both of these experts was relevant to establishing that the food stored in the Wyandotte warehouse was adulterated within the meaning of 21 U.S.C. § 342(a)(4). That section defines food as adulterated if it has been held under insanitary conditions "whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health." Mr. Brickley interpreted the data gathered by the FDA investigators and reached the conclusion that the Wyandotte warehouse had a high level of rodent infestation. Such testimony helped to prove contamination was a "reasonable possibility" under the conditions present. *See United States v. Anderson Seafoods, Inc.,* 622 F.2d 157, 159 (5th Cir.1980); *Berger v. United States, supra,* 200 F.2d at 821. Dr. Capucci's testimony established that the insanitary conditions at the Wyandotte warehouse could have rendered the food stored there injurious to human health. Capucci testified that the consumer could contract disease from handling the cellophane packets of sweet and sour sauce stored at the warehouse. Capucci also testified that workers who handled the bags of rice would be exposed to disease. Because the testimony of these two experts was relevant to the government's case, we find the district court did not abuse its discretion in allowing them to testify.

We have carefully reviewed the trial transcript and other records in this case. We find the trial court was well within its discretion in refusing to grant the defendants' mistrial motion and admitting the expert testimony. Accordingly, the judgment of the district court is affirmed.