UNITED STATES of America, Appellee,

v.

Robert WENDT, Appellant.

No. 82–1603.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 15, 1982.

Decided Dec. 22, 1982.

Rehearing Denied Jan. 18, 1983.

Law Offices of J. Martin Hadican by J. Martin Hadican and Joyce Yulkey MacDonald, Clayton, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Mitchell F. Stevens, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before BRIGHT and ARNOLD, Circuit Judges, and HUNTER,* Senior District Judge.

* The Hon. Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation.

ARNOLD, Circuit Judge.

Robert Wendt appeals from his conviction for conspiracy to effect the escape of a federal prisoner in violation of 18 U.S.C. §§ 371, 751 (1976). As grounds for reversal, Wendt argues (1) that the government's rebuttal witness gave impermissible testimony, (2) that the prosecution improperly called attention to Wendt's failure to testify, and (3) that the jury instructions contained an inappropriate charge. We affirm the conviction.

### I.

In January of 1981, Terry Corbett, a federal prisoner at the St. Clair County Jail in Belleville, Illinois, began devising schemes for escaping from custody. On January 26, 1981, Corbett wrote a letter to a friend on the outside, Douglas Drummond, requesting assistance in implementing various escape plans. Corbett's preferred plan was to have an attorney smuggle hacksaw blades in to him, and he suggested Robert Wendt as a possible candidate for the job. Drummond approached Wendt, and over the next few weeks, Corbett, Drummond, and on occasion Wendt communicated several times regarding the proposed escape plan.

Corbett's escape planning was monitored from the outset by the authorities, who were tipped off by Corbett's cellmate, a sometime Drug Enforcement Administration informer. Robert Jones, an undercover policeman with whom Corbett's cellmate had worked in the past, served as the intermediary between Corbett and his outside accomplices. While ostensibly facilitating communication, Jones made copies of the documents which he delivered for Corbett, and he also recorded several conversations featuring discussions of the escape plans. During one such conversation, Wendt stated that he had an attorney friend who could deliver the hacksaw blades to Corbett. Wendt asked for $3,000 up front for a dry run (which Jones gave him) and $7,000 upon completion of the escape. The escape plans never came to fruition.

Wendt was indicted for conspiring to effect the escape of a prisoner in federal custody in violation of 18 U.S.C. §§ 371, 751. At Wendt's trial,[1] which took place from April 20–22, 1982, he did not attempt to refute the government's evidence that he participated in several incriminating conversations taped by Officer Jones, or that he accepted the $3,000 prepayment for the dry run which never occurred. Wendt's defense was that he lacked the requisite intent to accomplish the object of the conspiracy. He attempted, through the testimony of a psychiatrist and other witnesses, to show that he intended only to con the others into giving him money. Wendt did not testify on his own behalf. The jury returned a guilty verdict, and Wendt was sentenced on May 14, 1982. This appeal followed.

### II.

Wendt raises three issues on appeal: (1) that the testimony of the government's rebuttal witness exceeded the scope of rebuttal and improperly referred to another crime, (2) that the prosecutor in his closing argument improperly called attention to Wendt's decision not to testify, and (3) that one of the jury instructions contained an inappropriate reference to a "conspiracy to defraud the United States." After reviewing the record, we conclude that the first and third issues are without merit and do not require further discussion. The second issue is somewhat more troublesome.

During the course of the government's closing argument, the prosecutor made the following comment in discussing the implications of the tape-recorded conversations in which Wendt participated: "What else is

1. Wendt was tried before the Hon. Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

Mr. Wendt going to say? ... He sits here in the very courtroom and listens to his own words."[2] The defense objected and asked for a mistrial, which the trial court denied, apparently accepting the prosecutor's explanation that he was merely commenting on the weakness of Wendt's defense. Wendt did not ask for a cautionary instruction when the mistrial was denied, and at the end of the trial the court gave the standard instruction warning the jury to draw no adverse inference from the defendant's failure to testify.

 The scope of closing arguments is a matter committed to the trial court's discretion. See *United States v. Bell,* 651 F.2d 1255, 1260 (8th Cir.1981). Wendt argues that the trial court abused its discretion in the instant case, because the prosecution violated his right against self-incrimination by calling the jury's attention to his decision not to testify. See *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (prosecution may not comment on defendant's failure to testify). This circuit recently restated its test for applying the *Griffin* principle:

> [F]or a prosecutor's comment to infringe on the fifth amendment right against self-incrimination, the statement "must have been clearly intended or be of such a nature that the jury would naturally and necessarily view the comment as a reference to the defendant's failure to testify."

*United States v. Bell,* 651 F.2d at 1260, quoting *United States v. Thurmond,* 541 F.2d 774, 776 (8th Cir.1976), *cert. denied,* 430 U.S. 933, 97 S.Ct. 1556, 51 L.Ed.2d 778 (1977).

Wendt is correct that the prosecutor's comment could possibly be viewed as a reference to Wendt's decision not to take the stand. However, after examining the comment in context, we conclude that an equally valid interpretation is that the comment served merely to emphasize the strength of the government's case by pointing out the implausibility of the defendant's explanations. Therefore, the comment did not "naturally and necessarily" make an impermissible reference. It was not so much a reference to Wendt's failure to testify, as to the weakness of what Wendt could have said if he *had* testified.

As the District of Columbia Circuit remarked in *United States v. Harris,* D.C.Cir., 627 F.2d 474, 476, *cert. denied,* 449 U.S. 961, 101 S.Ct. 375, 66 L.Ed.2d 229 (1980), "the line between a legitimate rebuttal of the defense arguments and an indirect comment on the fact that the defendant has not taken the stand is often a very thin one." In this case, as in *Harris,* the prosecutor came close to that line. However, we conclude that the trial court did not abuse its discretion in denying Wendt's motion for a mistrial.

Affirmed.

---

2. The full text from which the above quotation was excerpted follows:

> Ladies and gentlemen, you have all heard the story about the little boy whose mother said, "Look, don't eat any more cookies before your dinner." What happens, a half-hour later she goes into the kitchen and what does she see, she sees a hand in the cookie jar. She says, "I told you no more cookies until dinner." And he looks up and says, "But Mom, I wasn't taking any cookies, I was putting the cookies back in."
> Ladies and gentlemen, I submit to you, that's what Mr. Wendt is telling you. He said, "I'm not taking any cookies out, I'm putting the cookies back in." What else is Mr. Wendt going to say? Think about it. What else is he going to say? He comes into this courtroom, is he going to say, "No, it wasn't me, you've got the wrong person, wrong identification"? He can't say that. Is he going to say, "Detective Jones is lying, I didn't say the things that he said." He can't do that. He sits here in the very courtroom and listens to his own words.
> (Tr. 252–53).