STATE of South Dakota, Plaintiff and Appellee,

v.

Steve WAHLE, Defendant and Appellant.

No. 12970.

Supreme Court of South Dakota.

Considered on Briefs Oct. 23, 1980.

Decided Nov. 19, 1980.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Thomas E. Alberts of Engel & Alberts, Avon, for defendant and appellant.

MORGAN, Justice.

A Bon Homme County jury found appellant guilty of child abuse in violation of SDCL 26-10-1. The trial court sentenced him to serve two years at the South Dakota State Penitentiary in Sioux Falls, South Dakota. Appellant appeals from that judgment. We affirm.

Appellant and his wife, Carolann, have two children. At the time of the alleged incidents, the allegedly abused child (child) was six years old and in kindergarten.

Appellant and Carolann were arrested for violating SDCL 26–10–1, child abuse, a Class 6 felony. Carolann was released from the sheriff's custody the following morning. She had signed a statement, written out by her in longhand, as to the "child abuse" incidents. In her statement she alleged that it was appellant who had abused the child. She admitted she knew about the abuse, but stated that she did nothing about it because she was afraid of her husband since he had beaten her before. She then voluntarily committed herself to the Human Services Center in Yankton. In September 1979 she was placed there on an involuntary basis for a period not to exceed one year. At the time of appellant's trial she was at the Center, so committed.

Appellant was tried before a jury in Bon Homme County. Before the trial began and out of the presence of the jury panel, appellant's counsel moved to have the trial closed to the general public. The trial court granted the motion after which the jury selection process began. Shortly before the lunch recess, a lawyer for B & H Publishing Company, which published three independent newspapers in the county, made a motion that the trial court lift its order restricting the public from appellant's trial. After a hearing, the trial court determined that the First Amendment rights could not be taken lightly; that there would be no prejudice at that time to the rights of appellant; that there was no showing of prejudice or particular interest by the public in the matter; that to date there had been no showing that there were any parties trying to influence the jury; and that the trial court believed it had an inherent authority to allow the public to enter the trial. The trial court then granted the motion to lift its order restricting the public from the trial.

After both sides presented substantial testimony, the jury found appellant guilty of child abuse in violation of SDCL 26–10–

1. The trial court then sentenced him to serve two years at the state penitentiary.

■ Appellant first attacks the admission of Carolann's statement in evidence as an exception to the hearsay rule because it lacked "indicia of reliability." In her statement, Carolann admitted to knowing about the abuse and to doing nothing about it.

> [E]ach spouse has an equal duty to support and protect the child and cannot stand passively by and refuse to help them when it is reasonably within their power to do so. This is the sense in which the court must say wilful neglect of a parent includes the failure to maintain and protect an infant.

*State v. Zobel*, 81 S.D. 260, 274, 134 N.W.2d 101, 109 (1965). In *Zobel* the father's convictions on two counts of manslaughter in the deaths of two of his children were affirmed by this court, even though it was actually the mother's physical actions which led to the children's deaths. Carolann's statement, therefore, was an admission against her penal interest and an exception to the hearsay rule under SDCL 19–16–32,* providing she was "unavailable." SDCL 19–16–29(4) reads:

> "Unavailability as a witness" includes situations in which the declarant:
>
> .        .        .        .        .
>
> (4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity[.]

Appellant urges that "mental illness" as referred to above is such illness as is defined in SDCL 22–1–2(22):

> Terms used in this title, and in other statutes which prescribe a penalty for a public offense, unless the context otherwise plainly requires, mean:
>
> .        .        .        .        .

---

* SDCL 19–16–32, in pertinent part, reads:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true, is not excluded by § 19–16–4 if the declarant is unavailable as a witness.

(22) "Mentally ill," the condition of a person temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against him, he was incapable of knowing its wrongfulness[.]

■ We fail to see how this definition can possibly apply to SDCL 19–16–29(4). The State argues on the contrary that the trial court correctly applied the definition set out in SDCL 27A–1–,1. That statute reads:

The term "mentally ill" as used in this title includes any person whose mental condition is such that his behavior establishes one or more of the following:

(1) He lacks sufficient understanding or capacity to make responsible decisions concerning his person so as to interfere grossly with his capacity to meet the ordinary demands of life; or

(2) He is a danger to himself or others.

The term "mentally ill" does not include mentally retarded persons by reasons of such retardation alone.

Title 27A itself deals entirely with "Mentally Ill Persons." It was under this title and the above definition from it that Carolann was involuntarily committed to the Human Services Center. No further proof would be needed that a person is "mentally ill" than his involuntary commitment to a state mental institution on the basis that he is mentally ill.

The Second Circuit, United States Court of Appeals commenting on the Federal Rule of Evidence 804(a), from which SDCL 19–16–29 was derived, said: "[W]e think that ... it is up to the ... judge to decide if the witness is truly 'unavailable'–a finding that we would not be quick to overturn." *United States v. Bell*, 500 F.2d 1287, 1290 (2d Cir. 1974) (footnote omitted). In the case at hand the trial court determined that because Carolann was involuntarily committed, on the basis of "mental illness," to the Human Services Center at the time of appellant's trial, she was "unavailable for trial," and her written statement was therefore admissible as an exception to the hearsay rule. We agree and hold that the trial court was correct in so ruling.

■ Even assuming that either Carolann's statement was not against her interests, or she was not unavailable for the trial so that the statement was inadmissible as hearsay, we hold that admission of the statement was not prejudicial error. There was ample independent evidence adduced at trial to establish beyond reasonable doubt that appellant violated SDCL 26–10–1.

Child's kindergarten teacher testified that child arrived at school poorly dressed, hungry, and with numerous bruises. She had kept a diary as to what condition he was in on certain days, and when she questioned child about where the bruises came from, he would usually say that his dad hit him. One time child came to school with two gashes, which had been stitched up, on the back of his head. Child said that he had received them when his dad "tapped" him with a bottle because he and his little brother were being too rowdy. There was also a time when child arrived at school with a burn between his thumb and finger. The burn resembled a cigarette burn.

Child's school principal and the county health nurse, who served as the area school nurse, also testified as to child's numerous burns and bruises. Additionally, a Tyndall doctor who examined child testified that he found many bruises of various ages all over child's body, including areas that a child of that age would not normally injure when playing.

■ Appellant next argues that the press and general public had no right to be present at his trial. The trial court in this case originally granted appellant's motion to close the trial to the general public. Later, after affording the press a hearing on the matter, it rescinded its order and allowed the press and general public to attend. This court's decision in *Rapid City Journal v. Circuit Court, Etc.*, 283 N.W.2d 563 (S.D.1979), was handed down the day before appellant's trial, so neither the trial court nor counsel could rely on the opinion. While the trial court did not rely on *Rapid City Journal*, it did act correctly on its own

initiative in granting the press a hearing. Also, under *Rapid City Journal* and subsequent United States opinions, i. e., *Richmond Newspapers, Inc. v. Virginia*, —— U.S. ——, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980), the trial court acted correctly in reopening the trial. The closing of a trial should be an action of last resort taken by the trial court. The alternatives, e. g., change of venue, sequestration of the jury, etc., were not urged by appellant to protect his trial.

Upon our review of the case, there is a presumption in favor of the trial court's holding. *Lytle v. Morgan*, 270 N.W.2d 359 (S.D.1978). The burden is upon appellant to show that the trial court abused its discretion by granting the motion to rescind its grant of the motion to close the trial. Appellant has not met that burden.

Accordingly, we affirm.

All the Justices concur.