STATE of South Dakota, Plaintiff
and Appellant,

v.

Michael ABOUREZK, Defendant
and Appellee.

No. 13882.

Supreme Court of South Dakota.

Argued April 20, 1983.

Decided Nov. 2, 1983.

Rehearing Granted Dec. 2, 1983.

Arthur L. Rusch, Clay County State's
Atty., Vermillion, for plaintiff and appel-
lant; Mark V. Meierhenry, Atty. Gen.,
Pierre, on the brief.

Charles Rick Johnson of Johnson, Eklund
& Davis, Gregory, for defendant and appel-
lee.

HENDERSON, Justice (on reassign-
ment).

## ACTION

This is an intermediate appeal stemming
from appellee Abourezk's arrest for first-
degree possession of marijuana and conspir-
acy to possess marijuana. During a pretrial
hearing, the State attempted to introduce a
custodial statement of Gaylen Holy Rock,
an unavailable witness. The trial court re-
fused the statement and the State appeals
by leave of this Court. We reverse and
remand.

## FACTS

In the summer of 1981, the Clay County
Sheriff's Office was informed of a marijua-
na field being cultivated near Vermillion,
South Dakota, situs of our State University.
This information also revealed the descrip-
tion of a vehicle seen near the field, namely
a blue Ford pickup with a spotlight on the
roof. An investigation by the sheriff's of-
fice discovered cultivated marijuana. On
August 4, 1981, the day that Holy Rock
gave his statement, a deputy sheriff investi-
gated the area. He spotted the blue Ford

pickup with a spotlight on the roof and an older model red GMC pickup. He pulled in behind these two vehicles in the area of the field and followed the vehicles towards Vermillion.[1] This particular deputy sheriff (Kephart) called for assistance and Deputy Sheriff Millage responded. As the four vehicles neared Vermillion, Deputy Sheriff Millage stopped the blue pickup with the spotlight on the roof and found the driver to be appellee Abourezk. Gaylen Holy Rock, appellee Abourezk's brother-in-law, was driving the older red GMC pickup and it was determined that the license plates on this old pickup had been switched from a 1977 Pontiac Grand Prix, which was owned by appellee Abourezk. It was likewise determined that appellee Abourezk owned the old red pickup.

Holy Rock was charged with possession of marijuana. In Holy Rock's prosecution, he testified under oath at length in a proceeding to suppress his statement. He reaffirmed that he had not lied to the officer when he gave his earlier statement. In the suppression hearing, the trial court found beyond a reasonable doubt that Holy Rock was an individual committed to telling the truth and that Holy Rock had opportunities to shade the truth but did not. The trial court further found beyond a reasonable doubt that Holy Rock was informed of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that Holy Rock was asked if he understood them, to which Holy Rock replied that he did. After a pause as to whether he wished to waive his rights and talk about the matter, Holy Rock knowingly, intelligently, and voluntarily gave a written statement. This statement, among other facts, states in part: *"Mike Abzorecek* [sic] *furnishes transportation to the patch"* and *"Mike Aborezek* [sic] *contacted Galen* [sic] *today to go out and weed the patch."* These statements obviously tie in with the officer's earlier observations that day.

## ISSUE

IN A CRIMINAL ACTION, WHEN AN UNAVAILABLE WITNESS' STATEMENT FITS WITHIN SDCL 19–16–32, AN EXCEPTION TO THE HEARSAY RULE, IS ADDITIONAL EVIDENCE OF THE STATEMENT'S RELIABILITY NECESSARY TO COMPORT WITH THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT AND IF SO, WAS SUCH EVIDENCE PRESENT IN THE CASE AT BAR?

## DECISION

Holy Rock, now a fugitive from justice, made his custodial statement under circumstances which indicate that Holy Rock did not misrepresent appellee's complicity in marijuana activities and the cultivation of a marijuana field near our State University.

■ Hearsay is defined in SDCL 19–16–1(3) as: "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." SDCL 19–16–4 provides: "Hearsay is not admissible except as provided by law or by chapters 19–9 to 19–18, inclusive, or by other rules prescribed by the Supreme Court." SDCL 19–16–32, an exception to the hearsay rule, reads:[2]

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true, is not excluded by § 19–16–4 if the declarant is unavailable as a witness. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is

---

1. At the suppression hearing, Deputy Kephart testified: "Well, Mike was with him when I pulled in behind him from out there at the field and followed them into town and he was in the truck just ahead of Gaylen."

2. SDCL 19–16–32 is derived from Fed.R.Evid. 804(b)(3).

not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Since cross-examination is not available for a *custodial* SDCL 19–16–32 declaration, in order to comport with the Confrontation Clause [3] and thus pass Constitutional muster, "indicia of reliability" must be shown. Guidelines for these indicia of reliability are set forth in *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970),[4] and are, in summary: (1) the declaration contains assertions of past fact; (2) the declarant had presumed knowledge of the identity and role of the participants in the crime; (3) the declarant's recollection was not faulty; and (4) the declarant was not misrepresenting appellant's involvement in the crime. It is the fourth test that is at issue herein.

▮ Holy Rock's declarations contained assertions of past facts. Indeed, they were facts which transpired that very day. Obviously, Holy Rock had more than presumed knowledge of identity and the role of the participants in the crime; he was an actual participant with appellee Abourezk. Simply put, Holy Rock's declarations of the participation of him and appellee Abourezk were not excludable hearsay. The expression of the facts which had just transpired could not possibly have come from a stale or faulty recollection.

Holy Rock was a brother-in-law of appellee Abourezk and was closely associated with him. Therefore, it was less likely that Holy Rock should misrepresent the truth of the day or purposely lie to incriminate appellee Abourezk. In Holy Rock's statement, he admitted "helping out with the raising of the marijuana plants" for approximately $6.00 per hour. Appellee Abourezk's wife (Holy Rock's sister) buys Holy Rock's groceries. Holy Rock indicated in his statement: "The food is the pay rather than cash." Holy Rock also indicated that the patch is south of a farm appellee Abourezk once lived on. It is highly improbable that Holy Rock would make false statements to implicate his own sister.

Appellee Abourezk, immediately after Holy Rock was taken to the sheriff's office, sought and obtained legal counsel for Holy Rock. Unknown to Holy Rock, this counselor had called the sheriff's office to talk to Holy Rock. The deputy apparently had Holy Rock answer the telephone call but legal counsel had hung up. Shortly thereafter, this counselor arrived at the sheriff's office. Either by reading the record, or by argument before this Court, there is no doubt that appellee Abourezk arranged to have this counselor contact and represent Holy Rock forthwith.

All of the circumstances surrounding Holy Rock's statement were delved into in great detail at the suppression hearing in Holy Rock's case. This indicates collaboration and concert on the day in question, and when taken with all of the other circumstances, makes it highly improbable that Holy Rock would have falsely incriminated appellee Abourezk at the sheriff's office for they had just been together, and were brothers-in-law. In Holy Rock's statement, he depicted himself as an employee of appellee Abourezk. The ownership of the vehicles bears out such a relationship, for Holy Rock was driving appellee Abourezk's vehicle which reflected license plates belonging to another vehicle owned by appellee.

Therefore, under the four criteria of *Dutton,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213, Holy Rock's statement was reliable and was admissible under SDCL 19–16–32. It was error to exclude it as it was an admis-

3. In relevant part, the Sixth Amendment to the Federal Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." Similarly, art. VI, § 7 of the South Dakota Constitution provides: "In all criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face . . . ."

4. *Roberts v. Russell,* 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); and *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), predecessors to *Dutton,* employ a different approach.

sion against penal interest and there is no doubt that Holy Rock is unavailable under SDCL 19–16–29, he being a fugitive from justice.

Reversed and remanded.

FOSHEIM, C.J., and WOLLMAN, J., concur.

DUNN and MORGAN, JJ., dissent.

DUNN, Justice (dissenting).

This is the first time within my recollection that this court has permitted the admission into evidence of an unsworn statement of a so-called accomplice in an effort to convict a defendant. This is particularly distasteful when the "accomplice" is a young Indian lad who has been scared half to death by the police officers in an effort to find some evidence against Abourezk. Holy Rock's fear is shown by his testimony that the deputy told him he was up to his neck in trouble and had better start digging his way out. Of even more importance is Holy Rock's statement at the suppression hearing that "he's [Abourezk] got nothing to do with it." Since even the majority opinion recognizes that Holy Rock was "an individual committed to telling the truth," Holy Rock's statement at the hearing, which contradicts the written statement, should cause the reliability of the unsworn written statement to be seriously questioned.

A trip to the Indian reservation would produce Holy Rock. Instead, armed with this unsworn statement implicating the defendant, the law officers brand the lad as a "fugitive from justice" without any real effort to locate him. While a few calls may have been made, the State has not instituted any formal legal proceedings with the Oglala Tribe or its courts to apprehend, locate, or extradite Holy Rock. The State has not had any agent contact Holy Rock's parents or relatives or sent any agent onto the reservation to locate him. No national alert has been issued to arrest or locate Holy Rock. (Testimony of sheriff at hearing on motion to declare witness unavailable.)

This lack of effort forecloses any confrontation between the defendant and Holy Rock and any cross-examination on the self-serving declarations in his unsworn statement. Without this statement, the only evidence available is the fact that Abourezk and Holy Rock were seen driving in the general area of the marijuana patch in two trucks owned by Abourezk.

The majority opinion is filled with suppositions about how "improbable" it would be for this boy to "make false statements to implicate his own sister." This is the first time I have heard of any charge against the sister. Then there is the statement that there is *no doubt* that appellee Abourezk arranged to have this counselor contact and represent Holy Rock forthwith." These strong declarations would be more meaningful if they were substantiated by some facts.

Without cross-examination we have no idea what the relationship between Abourezk and Holy Rock might be. It certainly would not be the first time that brothers-in-law had less than great love for one another—if such is the case, and we will never know without a cross-examination of Holy Rock.

At two different places in the majority opinion, the author states that this marijuana patch was growing "near" or at the situs of our State University. What does this have to do with suppressing the unsworn statement of a witness? Does this make the unsworn statement more accurate, or is it just an improper jury argument to try and inject some prejudice against this defendant?

I certainly do not think that this court should give any deference to the fact that this defendant is a young law student, but by the same token, we should not lean over backwards to convict him on evidence that would ordinarily be suppressed against the "slimiest" of drug traffickers.

I would suppress the unsworn statement and force the authorities to bring Holy Rock into court to testify.

MORGAN, Justice (dissenting).

I agree with the majority that *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), and particularly the fourth criteria of the *Dutton* test is the controlling law in this case; but at that point they and I part company.

A recent Eighth Circuit Court of Appeals case, *Olson v. Green,* 668 F.2d 421 (8th Cir.1982), goes to the heart of the issue before us, the admissibility of an accomplice's custodial statement. In that case, the Minnesota Supreme Court did exactly what the State wants us to do here, to determine that such a statement was admissible solely for the reason that it was against declarant's penal interest under identical statutory language to SDCL 19–16–32.

The Eighth Circuit panel quoted *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), for the rule that an unavailable witness'

> statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

668 F.2d at 427 (citation omitted). The court went on next to consider whether a custodial statement falls within a firmly rooted hearsay exception and found to the contrary. After giving due deference to the Minnesota Supreme Court's interpretation of the statement as having qualified under Minnesota's penal interest exception to the hearsay rule, the Eighth Circuit Court stated: "[T]his alone does not guarantee a sufficient degree of reliability *for confrontation clause purposes.*" 668 F.2d at 428 (emphasis added). The panel cited the recent case of *United States v. Love,* 592 F.2d 1022 (8th Cir.1979), wherein they noted the inherent unreliability of custodial statements implicating a third person with the observation that " 'a strong incentive to speak, whether it be truthfully or falsely ... does not indicate sufficient reliability

to bring the statement within the [penal interest] exception to the hearsay rule.' " 668 F.2d at 428 quoting from *Love,* 592 F.2d at 1026.

The *Olson* court also cited the Advisory Committee Notes to the Federal Rules of Evidence 804(b)(3) which cautioned against admissibility of such custodial statements for the reason that "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." 668 F.2d at 428.

Since *Dutton* was written, there have been several cases elaborating upon the application of the four criteria of *Dutton.* I believe these are noteworthy. *Parker v. Randolph,* 442 U.S. 62, 73, 99 S.Ct. 2132, 2139, 60 L.Ed.2d 713, 723 (1979); *Ohio v. Roberts,* 448 U.S. 56, 65 n. 7, 100 S.Ct. 2531, 2538 n. 7, 65 L.Ed.2d 597, 605 n. 7 (1980); *United States v. Barlow,* 693 F.2d 954, 963–65 (6th Cir.1982); *United States v. Fleishman,* 684 F.2d 1329, 1338–40 (9th Cir.1982); *United States v. Perez,* 658 F.2d 654, 660–62 (9th Cir.1981).

Applying these decisions to the case before us, I arrive at a different conclusion than the author. I agree with the trial judge. The record in this case consists primarily of the written statement at issue and the transcript of the suppression hearing in *State v. Holy Rock* (Crim. No. 81–40) (1st Cir.S.D.) wherein Holy Rock sought to suppress the written statement as a confession. In addition, there is a modicum of testimony at the hearing in this case. At the close of the hearing below, the trial court entered findings of fact and conclusions of law. Some of these key findings are summarized as follows: The trial court found that the deputy had "advised Holy Rock that he was in trouble and had better start digging his way out"; that "[he] could dig his way out of trouble by cooperating with the law officer"; and, that "[he] (the officer) thought the marijuana belonged to Mike Abourezk and that he didn't think that Holy Rock was the type to be raising that stuff." The State does not dispute any of these findings although it does dispute a

subsequent finding that "the officer insinuated that Holy Rock was merely a tool being used by others, including Mike Abourezk." In this same regard, the trial court specifically found "the statements of the questioning officer may have influenced Holy Rock relative to the contents and signing of Exhibit 1."

More importantly, a key finding which the majority would sweep under the rug is: Holy Rock told the officer that the marijuana was not Mike Abourezk's and that Mike had "nothing to do with it." This is supported by Holy Rock's testimony at the suppression hearing. *It stands undenied on this record.* Even at the hearing below where the deputy sheriff testified, the state's attorney made no attempt to dispute that statement. A reading of the transcript in the hearing below clearly shows that the trial court below was greatly troubled by that statement.

Since the record below clearly supports these findings by the trial court, I cannot conclude that they are "clearly erroneous." I would affirm.