STATE of South Dakota, Plaintiff and Appellant,

v.

Michael ABOUREZK, Defendant and Appellee.

No. 13882.

Supreme Court of South Dakota.

Considered on Rehearing Feb. 15, 1984.

Decided Dec. 5, 1984.

Arthur L. Rusch, Clay County State's Atty., Vermillion, for plaintiff and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Charles Rick Johnson of Johnson, Eklund & Davis, Gregory, for defendant and appellee.

MORGAN, Justice.

This case is before us on defendant's (Abourezk's) petition for rehearing. The parties are referred to herein as they were referred to in the original opinion. *State v. Abourezk*, 339 N.W.2d 780 (S.D.1983). The procedural and factual backgrounds are detailed therein and are capsulized as follows.

Abourezk was charged with possession of marijuana and conspiracy to possess marijuana. During a pretrial hearing, State sought to introduce at trial a custodial statement of an unavailable witness, Galen Holy Rock, Abourezk's purported accomplice or co-conspirator. The trial judge excluded the evidence and State appealed by leave of this court.

The statement at issue was taken from Holy Rock while he was in custody of a deputy sheriff in the Clay County, South Dakota, Sheriff's Office. Holy Rock had been stopped on the road and brought into the office for alleged driver's license and license plate violations. After ticketing Holy Rock for these offenses, the deputy, pursuant to radioed instructions from the Clay County Sheriff, read Holy Rock his *Miranda* rights and proceeded to interrogate him regarding a marijuana patch in the vicinity of Holy Rock's original stop. The statement was written in longhand by the deputy and signed by Holy Rock. In anticipation of his own trial, Holy Rock first sought to suppress that statement by pretrial motion. When that trial judge refused suppression, Holy Rock simply left the jurisdiction of the court and his trial is still pending as he is termed a fugitive from justice.

At the pretrial hearing in the Abourezk case, State introduced into evidence the questioned statement and a transcript of the Holy Rock suppression hearing. With respect to the statement, the trial court made two specific findings, among many: (1) That the written statement was an admission against Holy Rock's penal interest; and (2) that the statement was unreliable and thus could not be used as evidence against Abourezk.

In our previous opinion, the majority of the court held that the statement was reliable and was admissible under SDCL 19–16–32, Statements Against Penal Interest.

Abourezk's petition for rehearing suggests that the court misapplied *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), when it relied upon the criteria therein for its determination of the reliability of hearsay in a confrontation clause analysis. We now agree.

The four criteria as summarized in the first majority opinion were: (1) The declaration contains assertions of past fact; (2) the declarant had presumed knowledge of the identity and role of the participants in the crime; (3) the declarant's recollection was not faulty; and (4) the declarant was not misrepresenting appellant's involvement in the crime. As Abourezk points

out, the first criteria is misstated. In *Dutton*, the first criteria is set out as follows: "First, the statement contained *no* express assertion about past fact ...." *Id.* at 88, 91 S.Ct. at 219, 27 L.Ed.2d at 227 (emphasis added). As the majority pointed out: "Holy Rock's declarations contained assertions of past facts. Indeed, they were facts which transpired that very day." *Abourezk*, 339 N.W.2d at 782. On its face, the statement would thus fail confrontation clause scrutiny.

Another aspect of this statement which makes *Dutton* an inappropriate vehicle to uphold admissibility in this case is the limitation the *Dutton* Court put on the statement involved in that case. The *Dutton* statement was not in any sense "crucial" or "devastating." It did not involve the use or misuse of a confession made in the coercive atmosphere of official interrogation, nor did it involve the wholesale denial of cross-examination.

At oral argument, the state's attorney termed the Holy Rock statement crucial. It was certainly the product of the coercive atmosphere of official interrogation. As Justice Dunn pointed out in his original dissent:

> [T]he "accomplice" is a young Indian lad who has been scared half to death by the police officers in an effort to find some evidence against Abourezk. Holy Rock's fear is shown by his testimony that the deputy told him he was up to his neck in trouble and had better start digging his way out.

*Abourezk*, 339 N.W.2d at 783.

Finally, the *Dutton* statement did not involve the wholesale denial of cross-examination. The evidence at issue in *Dutton* was the testimony of a witness, Shaw, who had been a cellmate of Williams, an alleged accomplice of Evans, the appellant. While both were incarcerated, Shaw, on one occasion asked Williams: "How did you make out in court?" Williams responded: "If it hadn't been for that dirty son-of-a-bitch Alex Evans, we wouldn't be in this now." 400 U.S. at 77, 91 S.Ct. at 214, 27 L.Ed.2d at 220. Shaw was only one of twenty prosecution witnesses, including a co-conspirator who testified at length about the actual event. While Williams was not present to testify, Shaw did, only as to the statement, and was thoroughly cross-examined. The *Dutton* Court described Shaw's testimony as being of peripheral significance. It was at this juncture that the Court pointed out the four indicia referred to above. It is obvious that Holy Rock's unsworn statement in this case cannot be compared to the testimony of Williams' spontaneous remarks to Shaw.

As the *Dutton* Court said: "[T]he mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' " *Id.* at 89, 91 S.Ct. at 220, 27 L.Ed.2d at 227. *California v. Green*, 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489, 499 (1970).

The theme of "indicia of reliability" has been a critical factor in most of the confrontation clause cases. As the United States Supreme Court summarized in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980):

> The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that "a primary interest secured by [the provision] is the right of cross-examination." In short, the Clause envisions
>> "a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."
>
> These means of testing accuracy are so important that the absence of proper confrontation at trial "calls into question the ultimate 'integrity of the factfinding process.' " (citations omitted)

*Id.* at 63–64, 100 S.Ct. at 2537–8, 65 L.Ed.2d at 606. The *Roberts* Court went on to say:

> Reflecting its underlying purpose to augment accuracy in the factfinding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that "there is no material departure from the reason of the general rule."

*Id.* at 65, 100 S.Ct. at 2539, 65 L.Ed.2d at 607. "The Court has applied this 'indicia of reliability' requirement principally and concluded that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'" *Id.* at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608 (citations omitted).

The State argues that SDCL 19–16–32 (statement against declarant's penal interest) is a firmly rooted exception and that Holy Rock's statement was clearly against his own penal interest; ergo it bears adequate indicia of reliability.

*Roberts, supra,* did not involve custodial statements of accomplices but rather preliminary hearing testimony where the hearsay exception exists for prior testimony where a defendant had opportunity for cross-examination. *See* SDCL 19–16–30.[1] Even here, the *Roberts* Court expressed some disagreement whether the test was mere opportunity, deminimus exercise of opportunity, or full-blown cross-examination. In any event, the *Roberts* Court held that the testimony of the unavailable witness called at the preliminary hearing as a defense witness, was admissible because counsel's questioning had been extensive cross-examination as a matter of form and "replete with leading questions, the principal tool and hallmark of cross-examination." *Id.* at 70, 100 S.Ct. at 2541, 65 L.Ed.2d at 610–11 (footnote omitted). *Roberts* is thus distinguishable in that regard from the case before us.

The dissent in this case, by relying on *United States v. Ammar,* 714 F.2d 238 (3d Cir.1983) and the cases cited therein, has taken a giant illogical leap. In *Abourezk,* we are dealing with custodial admissions. In *Ammar,* and *Nelson* and *Perez* cited therein, the courts were dealing with testimony of co-conspirators' statements.[2] We have no quarrel with the rules expounded in those cases in their proper perspective. They are so readily distinguished from the Holy Rock statement that further discussion is hardly necessary. Holy Rock's statement would not meet the first test of a co-conspirator's statement because it certainly was not made in the furtherance of the conspiracy.

A recent Eighth Circuit Court of Appeals case, *Olson v. Green,* 668 F.2d 421 (8th Cir.1982), goes to the heart of the issue before us, the admissibility of an accomplice's custodial statement.[3] In that case, the Minnesota Supreme Court did exactly what the State wants us to do here, to determine that such a statement was admissible solely for the reason that it was against declarant's penal interest under

1. SDCL 19–16–30 provides:

   Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

2. In *United States v. Ammar,* 714 F.2d 238, 257 (3d Cir.1983), at footnote 16, the court noted: "Virtually all of the statements ... admitted

under Rule 801(d)(2)(E) were made to other members of the conspiracy. In view of the importance of maintaining trust between conspirators, and the possibility that whatever was said by one might be relied upon by the others, the conspirators would have understood that a falsehood could have destroyed the enterprise in which they were jointly engaged. Moreover, many of the statements were made under circumstances which indicate spontaneity, decreasing the likelihood of deliberate falsehood."

3. This case was decided three years after *United States v. Nelson,* 603 F.2d 42 (8th Cir.1979), cited by the dissent.

statutory language identical to SDCL 19–16–32.

The Eighth Circuit Court quoted *Ohio v. Roberts, supra*, for the rule that an unavailable witness'

"statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness."

*Id.* at 427. The Eighth Circuit Court went on next to consider whether a custodial statement falls within a firmly rooted hearsay exception and found to the contrary. After giving due deference to the Minnesota Supreme Court's interpretation of the statement as having qualified under Minnesota's penal interest exception to the hearsay rule, the Eighth Circuit Court stated that "this alone does not guarantee a sufficient degree of reliability *for confrontation clause purposes.*" *Id.* at 428 (emphasis added). The panel cited the recent case of *United States v. Love*, 592 F.2d 1022 (8th Cir.1979), wherein they noted the inherent unreliability of custodial statements implicating a third person with the observation that " 'a strong incentive to speak, whether it be truthfully or falsely * * * does not indicate sufficient reliability to bring the statement within the [penal interest] exception to the hearsay rule.' " 668 F.2d at 428 quoting from *Love*, 592 F.2d at 1026.

The *Olson* Court also cited the Advisory Committee Notes to the Federal Rules of Evidence 804(b)(3) which cautioned against admissibility of such custodial statements for the reason that " '[A] statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest.' " 668 F.2d at 428.

It would appear that this court in the case of *State v. Wahle*, 298 N.W.2d 795 (S.D.1980), made the same mistake as the Minnesota Supreme Court. In *Wahle*, the trial court, in a child abuse case, admitted the written statement of defendant's wife, given while she was in custody, wherein she admitted knowing about the abuse by her husband but did nothing about it. The argument in appellant's brief in *Wahle*, centered on the issue of mental illness, vis-a-vis, unavailability to testify. The confrontation clause argument was based solely on the trial court's failure to examine the statement and question its reliability.

Relying on *State v. Zobel*, 81 S.D. 260, 134 N.W.2d 101 (1965), we held that the duty of each spouse to protect the child made the mother's statement an admission against her penal interest and therefore admissible as an exception to the hearsay rule under SDCL 19–16–32.[4] To the extent that we so held, it would appear that the Eighth Circuit Court of Appeals has since overruled us on the constitutional issue of the confrontation clause. *Olson v. Green, supra.*

In relying on *State v. McCafferty*, 356 N.W.2d 159 (S.D.1984), (Morgan, J.), the dissent in this case has fearlessly leaped from the situation presented in this case to an entirely different situation. As noted above, the Eighth Circuit Court of Appeals has apparently overruled part of our decision in *Wahle, supra*, which admitted *a custodial statement of a co-conspirator.* In *McCafferty*, we were examining admission of out-of-court statements of *victims* of child abuse who were of such tender years as to be unable to testify. We put a heavy burden on the trial court to determine sufficient indicia of reliability, suggesting several that would be appropriate to such cases. The discussion of the tender years doctrine in *McCafferty*, while necessarily springing from confrontation clause cases, was hardly geared to statements resulting from custodial interrogation.

The record in this case consists primarily of the written statement at issue and the transcript of the suppression hearing in *State v. Holy Rock*, (Crim.No.8140) (1st

---

**4.** No reference was made to the confrontation clauses of the federal or state constitutions.

Circuit, South Dakota), wherein Holy Rock sought to suppress his written confession. In addition, there is a modicum of testimony from the hearing in this case. The transcript of the hearing below clearly shows that the trial court was greatly troubled by the question of reliability. When, at the close of the hearing below, the State indicated its intent to petition for intermediate appeal the trial court made a statement from the bench and entered findings of fact and conclusions of law. Some of these key findings are summarized as follows: The trial court found that the deputy had "advised Holy Rock that he was in trouble and had better start digging his way out"; that "[he] could dig his way out of trouble by cooperating with the law officer"; and, that "[he] (the officer) thought the marijuana belonged to Mike Abourezk and that he didn't think that Holy Rock was the type to be raising that stuff." The State does not dispute any of these findings although it does dispute a subsequent finding that "the officer insinuated that Holy Rock was merely a tool being used by others, including Mike Abourezk." In this same regard, the trial court specifically found "the statements of the questioning officer may have influenced Holy Rock relative to the contents and signing of Exhibit 1."

More importantly, a key finding which was ignored in the first majority opinion was that Holy Rock told the officer that the marijuana was not Mike Abourezk's and that Mike had "nothing to do with it." This is supported by Holy Rock's testimony at the suppression hearing. It stands undenied on this record. At the hearing below when the deputy sheriff testified, the state's attorney made no attempt to dispute that statement or to qualify it in any manner.

Our Code of Civil Procedures at SDCL 15–6–52(a) provides for entry of findings of fact and conclusions of law for all actions tried without a jury or with an advisory jury. This statute further provides that such findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." On pretrial motions, SDCL 23A–8–8 (similar to Rule 12(e), Fed.R.Crim. Proc.) provides that where factual issues are involved in determining any motion the court shall state its essential findings in the record.

We have repeatedly held that the clearly erroneous rule does not apply to evidence presented by a deposition or other means where the witness does not appear before the trial judge. There is no presumption in favor of the trial court's determination. It is our duty to review the evidence and determine the issues involved as though presented here in the first instance. *Ayres v. Junek,* 247 N.W.2d 488 (S.D.1976); *Geo. A. Clark & Son, Inc. v. Nold,* 85 S.D. 468, 185 N.W.2d 677 (1971); *State Automobile Casualty Under. v. RuotsAlainen,* 81 S.D. 472, 136 N.W.2d 884 (1965). While these are civil cases, the logic of the rule is equally applicable to criminal cases.

We therefore examine the trial court's findings of fact to determine simply whether they are supported by the evidence. A reading of the suppression hearing transcript convinces us that the trial court's findings of fact below were correct and supported the conclusions of law.

We affirm the order of exclusion.

WOLLMAN, J., and DUNN, Retired Justice, concur.

FOSHEIM, C.J., and HENDERSON, J., dissent.

WUEST, Circuit Judge, acting as Supreme Court Justice, not participating.

HENDERSON, Justice (dissenting).

I would reverse; the Holy Rock statement should not be excluded from evidence.

Holy Rock, now a fugitive from justice, made his statement under circumstances which indicate that Holy Rock fairly represented appellee's complicity and conspiracy in cultivating an illegal marijuana field near our State University.

During the summer of 1981, information was provided to the Clay County Sheriff's Office that a blue Ford pickup truck with a roof-mounted spotlight had been spotted near a marijuana patch. Sheriff's officers responded and discovered a cultivated marijuana field. On August 4, 1981, the day of Holy Rock's statement, a deputy sheriff was investigating the area when he discovered the truck and an older model red GMC pickup truck. Near the marijuana field, the deputy began following the pickups toward Vermillion, South Dakota.[1]

A call for assistance was placed by the deputy and another deputy responded. Deputy Sheriff Millage stopped the blue truck with the roof-mounted spotlight and discovered that appellee Abourezk was its operator. Appellee Abourezk's brother-in-law, Gaylen Holy Rock, was operating the red truck which had license plates switched from a 1977 Pontiac Grand Prix owned by appellee Abourezk. It was determined that appellee Abourezk owned the red pickup truck. Holy Rock was taken to the sheriff's office for license plate violation.

Holy Rock was later charged with possession of marijuana. In Holy Rock's prosecution he testified in a suppression hearing, therein reaffirming that he had been truthful when he gave a statement to a Clay County Deputy Sheriff. Holy Rock's trial court found beyond a reasonable doubt that Holy Rock was an individual committed to telling the truth and although Holy Rock had opportunities to shade the truth, he did not. Holy Rock's statement reads in part: *"Mike Abzorecek [sic] furnishes transportation to the patch"* and *"Mike Aborezek [sic] contacted Galen [sic] today to go out and weed the patch."*

This case is now on rehearing before this Court wherein we have limited the issue to what case law should be applied to an unavailable witness' statement in a criminal action.

Importantly, our original decision herein held: "Since cross-examination is not avail-

able for a *custodial* SDCL 19–16–32 declaration, in order to comport with the Confrontation Clause and thus pass Constitutional muster, 'indicia of reliability' must be shown." *State v. Abourezk,* 339 N.W.2d 780, 782 (S.D.1983) (emphasis in original) (footnote omitted). *"Guidelines* for these indicia of reliability are set forth in *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970) ...." *Id.* (emphasis supplied). Notice the word "guidelines" was employed; the majority glosses over this language and applies *Dutton,* 400 U.S. 74, 91 S.Ct. 210, as though each guideline was cast in stone and had to be established in total.

In *United States v. Ammar,* 714 F.2d 238 (3rd Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983), the United States Court of Appeals for the Third Circuit was confronted with a conspiracy setting, and I quote therefrom:

We agree with the government that in many, if not most, instances a coconspirator statement which is admissible under Rule 801(d)(2)(E) will also be sufficiently reliable to satisfy the Confrontation Clause. *See United States v. Nelson,* 603 F.2d 42, 46 (8th Cir.1979) ("absent some unusual circumstance" coconspirator statements which satisfy Fed.R.Evid. 801(d)(2)(E) do not violate the Confrontation Clause). The Ninth Circuit has identified the following factors as relevant to the Confrontation Clause inquiry:

(1) whether the declaration contained assertions of past fact; (2) whether the declarant had personal knowledge of the identity and role of the participants in the crime; (3) whether it was possible that the declarant was relying upon faulty recollection; and (4) whether the circumstances under which the statements were made provided reason to believe that the declarant had misrepresented the defendant's involvement in the crime. *Dutton,* 400 U.S. at 88–89, 91 S.Ct. at 219–220.

---

**1.** At the suppression hearing, the deputy testified: "Well, Mike was with him when I pulled in behind him from out there at the field and followed them into town and he was in the truck just ahead of Gaylen."

*United States v. Perez*, 658 F.2d [654] at 661 [ (9th Cir.1981) ] (footnote omitted). The court also stated that, *"All four elements need not be present* in order to satisfy the confrontation clause. In some circumstances, a statement may be admitted over confrontation clause objections even if it does not pass scrutiny under each prong of the *Dutton* test." *Id.*

*Ammar*, 714 F.2d at 256 (emphasis supplied).[2]

Since the majority opinion traverses into a child abuse case, *State v. Wahle*, 298 N.W.2d 795 (S.D.1980), it is of interest for us to examine our recent holding in *State v. McCafferty*, 356 N.W.2d 159 (S.D.1984) (Morgan, J.), to discover how the requirements for an "indicia of reliability" may be applied.[3] In *McCafferty*, we held: "The policy behind the confrontation clause must give way to the public's interest in effective law enforcement, the probative necessities of particular cases and other policy considerations." 356 N.W.2d at 162 (citing *Ohio v. Roberts*, 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597, 606 (1980)). We continued:

> We turn to McCafferty's rights under Article VI, Section 7 of the South Dakota Constitution. First, we note that while there are semantic distinctions in the phrasing of the two constitutional provisions, both speak to the same protection. "It seems to be held everywhere and by all courts of last resort that 'to be confronted with the witnesses against him' and to 'meet the witness face to face' mean one and the same thing[.]" *State v. Heffernan*, 24 S.D. 1, 4, 123 N.W. 87, 89 (1909). The *Heffernan* Court was examining the constitutional rights with regard to using preliminary hearing testimony of an unavailable witness in the trial of the defendant. The opinion stated:

> > There never was at common law any recognized right to an indispensable thing called confrontation as distinguished from cross-examination. . . . Moreover, this right of cross-examination thus secured was not a right devoid of exceptions. The right to subject opposing testimony to cross-examination is the right to have the hearsay rule enforced, for the hearsay rule is the rule requiring cross-examination. Now the hearsay rule is not a rule without exceptions. There never was a time when it was without exceptions. There were a number of well-established ones at the time of the earliest

**2.** Although the majority attacks the use of *Ammar* herein, it is of interest to note that *Ammar* is premised upon and employs the exact same "factors" used by the majority in that both *Ammar* and the case at bar are conspiracy cases. It is illogical to assume that the same four "factors" must be almost blindly applied in the case at bar by the majority while other courts and cases look to the facts of each statement to discern if the root need of the confrontation clause—a truthful statement—has been obtained. Unfortunately, the majority is so soundly entrenched in its restricted view that it fails to grasp the clear language of *Ammar*. The majority reads: "Holy Rock's statement would not meet the first test of a coconspirator's statement because it certainly was not made in the furtherance of the conspiracy." *Ammar* used each element as a "factor" rather than a rigid "test" and undeniably holds that all four factors need not be present to satisfy confrontation clause scrutiny.

**3.** The majority holds that somehow the requirements of the confrontation clause which are mechanically applied herein via its rigid four-part test, simply erode in the "tender years" setting. The problem, of course, is that in both a crime against children and a drug crime against the people of South Dakota, the *same* confrontation clause is employed and the *same* goal, to reach the truth, is at issue. The public's interest in effective law enforcement is equally strong in both cases. Common conceptual threads inextricably bind the two settings.

One cannot help but wonder how the majority in the case at bar is able to carte blanche dismiss the *State v. Heffernan*, 24 S.D. 1, 4, 123 N.W. 87, 89 (1909), language so recently used in *McCafferty*. In *Heffernan*, we did not address a "tender years" setting. In the final analysis, the majority wishes to expand and contract the confrontation clause at will with imprudent deviation. If judicial policy is underlying this state's confrontation clause case law, then judicial policy ought to be brought out into the light of day and uniformly applied rather than skirted as convenience dictates.

Constitutions, and others might be expected to develop in the future. The rule had always involved the idea of exceptions, and the Constitution makers indorsed the general principle merely as such. They did not care to enumerate exceptions. They merely named and described the principle sufficiently to indicate what was intended. The rule sanctioned by the Constitution is the hearsay rule as to cross-examination, with all the exceptions that may legitimately be found, developed, or created therein.

24 S.D. at 10–11, 123 N.W. at 91–2. In light of this authority, we hold that the strictures of the South Dakota Constitution on the right of confrontation are not violated by evidence held admissible under SDCL 19–16–35.[4]

*McCafferty*, 356 N.W.2d at 164–65.

This case is replete with "indicia of reliability" and "the public's interest in effective law enforcement" (and, I might add, the public's interest in justice).

Holy Rock was appellee Abourezk's brother-in-law. Holy Rock and Abourezk were closely associated. It is unreasonable to assume that Holy Rock would purposely lie to also incriminate appellee Abourezk. In Holy Rock's statement, he admitted "helping out with the raising of the marijuana plants" for approximately $6.00 per hour. Appellee Abourezk's wife (Holy Rock's sister) purchased Holy Rock's groceries. Holy Rock indicated in his state-ment: "The food is the pay rather than cash." Holy Rock also indicated that the patch is south of a farm where appellee Abourezk once lived. It is highly improbable that Holy Rock would make false statements to implicate his own sister.

Appellee Abourezk, immediately after Holy Rock was taken to the sheriff's office, sought and obtained legal counsel for Holy Rock. Unknown to Holy Rock, this counselor had called the sheriff's office to talk to Holy Rock. The deputy apparently had Holy Rock answer the telephone call but legal counsel had hung up. Shortly thereafter, this counselor arrived at the sheriff's office. Either by reading the record, or by argument before this Court, there is no doubt that appellee Abourezk arranged to have this counselor contact and represent Holy Rock forthwith.

All of the circumstances surrounding Holy Rock's statement were delved into in great detail at the suppression hearing in Holy Rock's case. This indicates collaboration and concert on the day in question, and when taken with all of the other circumstances, makes it most improbable that Holy Rock would have falsely incriminated appellee Abourezk at the sheriff's office, for they had just been together and were brothers-in-law. In Holy Rock's statement, he depicted himself as an employee of appellee Abourezk. The ownership of the vehicles bears out such a relationship; Holy Rock was driving appellee Abourezk's vehicle which reflected license plates be-

---

**4.** SDCL 19–16–35 provides:

A statement not specifically covered by any of §§ 19–16–30 to 19–16–34, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4 if the declarant is unavailable as a witness and if the court determines that

(1) the statement is offered as evidence of a material fact;

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

As for the notice requirement, we held in *McCafferty*, 356 N.W.2d at 162: "[T]he record shows that McCafferty sought in advance of trial to have the testimony suppressed, evidencing that he had sufficient notice and opportunity to meet the testimony to satisfy the statutory notice requirements." Under the majority's analysis, it would appear that *McCafferty* is overruled. If it is not overruled, it appears that it has been modified or its language rejected. *McCafferty* and the majority opinion are not in sync.

longing to another vehicle owned by appellee.

The trial court's findings are inconsistent. In Finding of Fact number 8, the court stated: "The State had no facts at their disposal relative to the background of Holy Rock so as to enable it to determine his history of truthfulness or reliability and no evidence of such was offered to the Court." Yet, previously in Finding of Fact number 4, the trial court stated: "Holy Rock was an American Indian from Oglala, South Dakota, and was the *brother of Defendant's wife.*" (Emphasis mine.)

Additionally, the majority opinion's blanket reliance upon *Olson v. Green*, 668 F.2d 421 (8th Cir.1982), fails to reveal the differences between *Olson* and the case at bar. In the federal case, the out-of-court statement was made by Jean Beverly Link. Ms. Link had no independent relationship with defendant Olson. Ms. Link wished to have witnesses murdered to protect her boyfriend, Black. Another witness testified "that Olson had agreed to destroy evidence for Black because Black had told Olson that Link's father would get Olson a job." *Olson*, 668 F.2d at 424. Link's out-of-court statements placed the blame on Olson for the murders.

In its opinion, the Eighth Circuit Court of Appeals also quoted Mr. Justice White and held:

> Justice White similarly noted the inherent unreliability of such statements when he observed:

> Due to his strong motivation to implicate the defendant and to exonerate himself, a codefendant's statements about what the defendant said or did are less credible than ordinary hearsay evidence.

*Olson*, 668 F.2d at 428.

The problem is that Holy Rock's statements implicated rather than exonerated Holy Rock. It is clear that Holy Rock did *not* try to shift the blame from himself to appellee Abourezk. Holy Rock simply told the truth—both he and his brother-in-law were associated with the Vermillion marijuana field.

Underlying the rules of evidence is a basic purpose: to get at the truth. Justice, in its finest raiment or simplest cloth, is nothing more than a search for truth. The truth, and justice, is hereby subserved by a technical and theoretical misapplication of the rules of evidence. Truth here leaves this case, as did Holy Rock and Abourezk leave the marijuana field near our State University.

I am hereby authorized to state that Chief Justice FOSHEIM joins in this dissent.